## DURANT v. NASH.

1. The proper construction of a will depends upon the intention of testator, reached through the language used in the will, read in the light of surrounding circumstances, with a careful consideration of all its parts, so that it shall stand together as a whole, if possible.

2. A devise was to testator's widow and all of his children, share and share alike, the widow's portion to be hers for life and at her death then to return to his surviving child or children or their legal issue; but if no child or children or their issue, then the widow's portion should go over.    *Held*, as to the widow's portion, that it was given to her for life, with a contingent remainder in fee, first to testator's surviving children; and there being but one child, and no other issue, living at the widow's death, her portion vested absolutely in that child.

3. As to the children's portions, the will directed that the portion of one who died leaving no issue should be equally divided between testator's surviving child or children or their legal issue, and if all his children should die, leaving no legal issue, then over, the property to be kept together until one of his children arrived of age or married, and then divided.    *Held*, that all the children who survived testator took a defeasible fee, subject to be defeated upon their dying without issue, before the period for division fixed in the will; and only two children having survived testator, one of whom died in early infancy, the other, on attaining his majority, took an indefeasible fee in the portion given to the children.

4. The word "surviving" interpreted, in favor of an early vesting in the primary objects of testator's bounty—his own children—to refer to the time fixed for division.

Before FRASER, J., Sumter, December, 1888.

This appeal was heard in January, 1889.    It was from the following decree, rendered at chambers:

This is an action for the specific performance of a contract for the sale of land, and has been heard by me at chambers, by the consent of all the parties to the cause.

The facts stated in the complaint and in the answer are all admitted, and the only question raised is as to the validity of the title which plaintiff has tendered to the defendant. This question depends on the construction of the will of William Reese Shaw. The question in the case is, whether W. Reese Shaw, a son of said testator and under whom plaintiff claims title, took under said will a fee defeasible, a life estate only, with remainder at his death, in case of failure of issue, to the mother, brothers, and sisters of testator, or an estate in fee simple. The parties desire to have a decision at an early date, and I have, therefore, no time to elaborate my views on the subject. I therefore simply announce my conclusions, that as the period fixed by the will for a division of the property has long since passed, and the limitations over could not take effect, because there was then no such condition of things on which they could take effect, and the period of division is the only time at which such contingency could carry over the estate, W. Reese Shaw, the son, took under the will an absolute estate in fee, and as such can make good title to the same.

It is therefore ordered and adjudged, that the plaintiff do deliver to the defendant the deed described in the complaint, and that on the tender thereof the defendant do pay to plaintiff the said sum of four thousand nine hundred and eighty dollars, with interest from (3rd) third day of December, 1888.

The defendant appealed upon the ground that his honor erred in holding and adjudging, "that as the period fixed in the will for a division of the property has long since passed, and the limitations over could not take effect because there was then no such condition of things on which they could take effect, and the period of division is the only time at which such contingencies could carry over the estate, W. Reese Shaw, the son, took under the will an absolute estate in fee, and as such can make good title to the same." And that he further erred in ordering and adjudging "that the plaintiff do deliver to the defendant the deed described

in the complaint, and that on the tender thereof the defendant do pay to plaintiff the said sum of four thousand nine hundred and eighty dollars, with interest from (3rd) third day of December, 1888."

*Mr. B. P. Barron,* for appellant.

*Messrs. Haynsworth & Cooper,* contra.

February 23, 1889. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. One William R. Shaw, late of Sumter County, died in 1864. He left a last will and testament, of which the following is a copy:

"First. I direct that a fair valuation or appraisement be made of all my personal property (except kitchen furniture), and be equally divided between my beloved wife, Mary M. Shaw, and all my children, share and share alike. I will and direct that my said wife be allowed the privilege of choosing her lot of the personal property, and the said portion of the personal property so coming to my said wife shall be and remain hers and at her disposal. I also give my said wife all my kitchen furniture.

"Second. I will and direct that all my real estate be equally divided between my beloved wife, Mary M. Shaw, and all my children, share and share alike; the portion of said real estate so coming to my said wife shall be hers during her natural life only; at her death, then and in that case return to my surviving children or child, or their legal issue, if any. In the event there being no surviving child or children of mine, nor legal issue of theirs, then and in that case the said portion of real estate I will and direct shall go to my mother, brothers, and sisters; and in the event that either of my brothers or sisters should be dead, then and in that case his or her legal children to be entitled and shall receive such share or shares as their respective parent or parents would have been entitled to had they been living.

"Thirdly. I will and direct that all the personal property not willed to my wife, but to my children, in the event that either of them should die leaving no legal issue, then his or her portion to be equally divided between my surviving child or children.

In the event that all my children should die leaving no legal issue, then and in that case I will and direct that their portion or portions shall go to my mother, brothers, and sisters, as provided for in the disposition of my real estate.

"Fourthly. I will and direct that the real estate coming to my children, that in the event either of them should die leaving no legal issue, then his or her portion shall be equally divided between my surviving child or children, or their legal issue. In the event that all my children die leaving no legal issue, then and in that case I will and direct that their portion or portions of real estate shall go to my mother, brothers, and sisters. And should either of them, that is, either of my brothers or sisters, should die, then and in that case his or her legal issue shall be entitled to such share or shares as their respective parents or parent would have been entitled to had they been living.

"Fifthly. I will and direct that the several portions, both of real and personal estate, as directed to my mother, brothers, and sisters, or their legal issue, shall be equally divided between them, share and share alike.

"Sixthly. I will and direct that the real and personal estate herein given to my children, be kept together until either should marry or arrive at legal age, then let an equal division be made, and their portions assigned them.

"Should there be an occasion to sell any portion of my property for the payment of any just debt that may be against my estate, I hereby authorize and empower my executors to sell any portion of my personal property for the liquidation of the same." The only other provision of the said will was the appointment of executors.

The will was dated April 6, 1864, and he died soon thereafter. At the time of the execution of the will, he had a wife and two children, and they survived him. One of the children died in early infancy intestate and without issue, and the widow died some years after the testator. The other child, W. Reese Shaw, became of age years ago. There was never any actual division of the estate of the testator, either real or personal, as directed by the will. W. Reese Shaw, the surviving son, in February, 1888, conveyed the tract of land in controversy (to wit, the real estate

of his father, mentioned in his will) to the plaintiff, who, in December, 1888, contracted to sell the same to the defendant, Nash, for $4,980, to be paid on the execution and delivery to him of good and sufficient titles in fee simple. A deed, accordingly, was executed and tendered by plaintiff to defendant on 3rd day of December, 1888, with covenant of general warranty, &c., who refused to receive it, on the ground that plaintiff's title was defective. Whereupon the action below was commenced for specific performance.

The question in the case is, whether W. Reese Shaw had such interest in the real estate of his father as authorized him to convey the tract of land in question, with good and sufficient titles, to the plaintiff. The determination of this question must depend upon the intention of the testator, W. R. Shaw, reached through the language used in the will, read in the light of surrounding circumstances, with a careful consideration of all the parts of the will, construed, so that, if possible, as a whole, it shall stand together. *Reams* v. *Spann*, 26 S. C., 564.

Now, the second clause of the will directs that all of the testator's real estate be divided between his wife, Mrs. Mary M. Shaw, and all of his children, share and share alike, the portion going to his wife to be hers for life, and at her death then to return to his surviving children or child, or their legal issue. If there had been no other clause in the will but as above, there could be no doubt but that Mrs. Shaw, the widow, would have taken a life estate in one-third, with contingent remainder to such child or children of the testator as may have survived her, or, in case of the death of a child, to his legal issue, if any. But this clause went further ; it provided that in the event of no surviving child or children, or their legal issue, that this portion given to the widow should go to his mother, brothers, and sisters, if alive, but if dead, then to their children, the children to take the share of the parent, &c., &c. A proper construction of this clause, as a whole and independently, we think, gave a life estate to the widow, with a contingent remainder in fee, first, to the child or children of the testator, second, to their legal issue, third, to the mother, brothers, and sisters of the testator, then to his or her children, the contingency being which of these classes might survive the

life-tenant.    W. Reese Shaw, a son of testator, having survived the life-tenant, under this construction he took a fee absolute in her third.    This seems to be conceded; so that, as to that third, his conveyance to the plaintiff would confer complete title.

In the 4th clause—which is the important one here in connection with the 6th—he directed that the real estate devised to his children, in the event that either of them should die leaving no issue, should be equally divided between his surviving child or children or their legal issue, and in the event that all of his children should die leaving no legal issue, then to go to mother, brothers, and sisters, as directed in the second clause, with reference to the portion given to his wife for life.    And in the 6th clause, he directed that the real and personal property given to his children should be kept together until either of his said children should arrive at age or marry, when the division between them should be made.    Now, there was no life estate here between the death of the testator and his children as to their interest.    The devise was to the children directly, and the second clause above directed a division, so that the widow should have her portion. This division did not actually take place, but, in contemplation of law, it must be regarded as having been made—the widow entitled to enter at once upon the enjoyment of hers, and the other portion held under the 6th clause above, subject to division when either child arrived at age or married.

Now, what was the intention of the testator when he said in the second clause, "that his real estate should be divided between his wife and *all* of his children"?    Did he mean his children at the date of his will, or at his death?    But it is not necessary to discuss that question, as the two children who were in being at the date of will were in being at his death, so that it is certain whatever interest was devised to children went to these two.    But what was meant by the language in the 4th clause, where it is directed that "in the event either of his children should die leaving no legal issue, then his or her portion shall be equally divided between my surviving child or children, or their legal issue"? The testator must have meant by this language one of three things: First, that his children in being at the date of his will, and such as might be born before his death, should at his death

take the property in fee, except that if any died before his death, his or her portion should go to his surviving child or children, or their legal issue in fee. Second, that the child or children in being at his death, should take the property, and it should be kept together, under the 6th clause, until one arrived at age or married, when it should be divided between them, except that if any should die without leaving legal issue before that time, such interest should go to the survivors or their legal issue, and if all should die before said period of division, leaving no legal issue, then the whole should go to his mother, brothers, and sisters. Third, that the child or children in being at his death should take, but if any died at any time after this, leaving no legal issue, then to go to the survivors or their legal issue, and if all died without leaving legal issue, then to the mother, brothers, and sisters, &c.

If he meant the first, then his two children who were in being at the making of the will, and in being at his death, and the contingency of death leaving no legal issue. which, if it had happened in the intermediate time, would have defeated them, not having happened, they took a fee subject to no defeasance—one-third each—or, rather, one half each of the two thirds after the widow's portion had been taken off. And one of these children having died since, intestate and unmarried, his mother and brother, W. Reese Shaw, became his heirs, and the mother having died intestate, W. Reese became entitled to the whole of his deceased brother's portion ; in which event, the conveyance of the said W. Reese Shaw to the plaintiff would be good as to the whole of the land conveyed.

If the testator meant, as suggested second above, then the two children of the testator took a fee each, subject to be defeated in each in the event either died before the time fixed for the division between them, leaving no legal issue, in which event the defeated fee would go to the survivor ; and if both died before that time, leaving no legal issue, then to go to the mother, brothers, and sisters. One of the two died before the time fixed for the division, leaving no legal issue ; his fee, therefore, was defeated and went to the survivor, W. Reese Shaw, who, having survived the time fixed, became thereby the absolute owner of both his deceased

brother's portion and of his own, free from all contingency or danger of defeasance; in which event, his conveyance to the plaintiff would carry a good and sufficient title to the whole land conveyed, as in the first instance.

If he meant as indicated in the third suggestion above, then one of the children having died, leaving no legal issue, but with his brother, the said W. Reese Shaw, surviving, his portion became vested in the said W. Reese in fee, holding his own share, however, still dependent upon the contingency whether he shall hereafter die leaving no legal issue, which would defeat his fee of the one-third devised to him. If this last be the true construction of the will, then the conveyance of W. Reese Shaw to the plaintiff would pass a good title to only two-thirds of the land, the title to the other third being still liable to be defeated by W. Reese Shaw leaving no legal issue at his death, when this third would pass to the mother, brothers, and sisters of the testator.

Now, the language of the will might be construed in harmony with either one of the three suggestions made above. But which did the testator mean? If he had intended the first, to wit, that if either of his children in being at the making of the will died before his death leaving no issue, then the property should go to such as might be living at his death, there would have been no necessity to use the word *"surviving."* The words, *to his children,* alone would have been sufficient. *Roundtree* v. *Roundtree,* 26 S. C., 450. But the word "surviving" was used, and under that rule of construction which requires all the words in an instrument to be considered, and be given some force if possible, we cannot overlook that word; and especially it cannot be disregarded in this case, because when we come to consider the second suggested interpretation above, we find a very appropriate place for it. Suppose the testator had intended to devise a fee defeasible to his children in being at his death, the fee to be defeated in any one upon his death at any time before a period fixed in the will for a division of the property between said children, leaving no issue, in which event the share of said deceased should go to the survivor; or, if all the children should die before that time, leaving no issue, then over to others? Then the word "surviving" would have the place found in this will. Indeed, if such

was the intent and desire of the testator, we do not see how he could have better expressed it than has been done here. It is true, perhaps, that the will might be construed in harmony with the third suggestion above, equally with the second, to wit, that if either of his children died at any time leaving no legal issue, then the fee should be defeated in favor of the "surviving." There this word would also be appropriate and necessary.

Now, which of these constructions must be adopted? The children of the testator were the primary objects of his bounty, and we must suppose that it was his purpose to give them the full enjoyment of the property devised to them, and after it was put in their possession at a proper age, that it should be theirs, rather than that it should be tied up for an indefinite period for the benefit of collateral relations. The second interpretation above accomplishes this purpose. And besides, the law favors an early vesting of estates, and abhors perpetuities, restrictions, and hinderances to the enjoyment of property. We conclude that the testator intended as supposed in the second suggestion above; and that the deed of W. Reese Shaw to the plaintiff ought to have been accepted as conveying a good and sufficient title to the land in question. See *Evans* v. *Godbold*, 6 Rich. Eq., 30; *Roundtree* v. *Roundtree*, 26 S. C., 450; *Reams* v. *Spann, Ibid.*, 561; *Schoppert* v. *Gillam*, 6 Rich. Eq., 86; *Cripps* v. *Wolcott*, 4 Madd., 11.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.