## THE ALEX. Y. HANNA.

(District Court, D. Delaware.    October 3, 1917.)

No. 926.

1. COUNTIES ⟨∞⟩208—ACTIONS—TORTS.
    No action of tort lies against a Delaware county, or its levy court, for recovery of damages.

2. COUNTIES ⟨∞⟩208—ACTION AGAINST LEVY COURT—ADMIRALTY.
    Despite the uniformity of admiralty jurisdiction and the injunctive power of a court of equity, which extends to members of a county levy court to restrain them from acting beyond the scope of their jurisdiction or otherwise unlawfully, a libel in admiralty against the members of a Delaware county levy court, to recover for injuries to a vessel resulting from negligence in opening and operating a drawbridge across a navigable river, which was under control of the levy court, cannot be maintained; neither the county nor the levy court being subject to tort actions.

In Admiralty.    Libel by George W. Bush & Sons Company, owner of Barge No. 9, against the steam-tug Alex. Y. Hanna and the members of the Levy Court of New Castle County, Delaware.    Libel dismissed as to the members of the Levy Court.

Lewis, Adler & Laws, of Philadelphia, Pa., for libelant.
Willard M. Harris, of Philadelphia, Pa., for the Alex. Y. Hanna.
Frank L. Speakman and Percy Warren Green, both of Wilmington, Del., for levy court commissioners.

BRADFORD, District Judge.    Geo. W. Bush & Sons Company, as owner of barge "No. 9," filed a libel against the steam-tug "Alex. Y. Hanna," and also against the individuals composing the levy court of New Castle county, Delaware, at the time of the collision therein alleged, and the individuals composing the levy court at the time of the filing of the libel, praying for the sale of the steam-tug to pay damages, interest and costs.    The libel sets forth, among other things, that it was, under the laws of Delaware and the acts of Congress, the duty of the levy court to properly maintain, operate, and open a drawbridge crossing the Christiana river in the city of Wilmington, being navigable water, so that vessels navigating the same might pass through the draws of the bridge in safety; that through the fault and negligence of the steam-tug and of the levy court, its agents, servants and employés, including the bridge-tender, the draws of the bridge were not properly operated and opened August 18, 1916, the date of the collision, although due signal had been given, whereby without any fault and negligence on the part of barge No. 9 it was injured and received damage on account of which this suit was instituted.    The libel, aside from the relief in rem prayed against the steam-tug, also contains a prayer as follows:

"That a citation, according to the course of this Honorable Court in causes of admiralty and maritime jurisdiction, may issue against the said Samuel L. Burris, William T. Purks, Everett B. Hollingsworth, Martin E. Smith, Benjamin A. Groves, Thomas S. Foreacre, and William A. Scott, composing the

said Levy Court of New Castle County at the time of the happening of the disaster aforesaid, and against William T. Purks, Benjamin A. Groves, Thomas S. Foreacre, Robert M. Burns, Isaac C. Elliott, James G. Shaw and James A. Buckson, comprising the said Levy Court as now constituted, citing them to appear and answer all and singular the matters aforesaid, and further that your libelant may have such other and further relief in the premises as in law and justice it may be entitled to receive."

The libel, aside from the relief prayed against the steam-tug, is purely in personam, whether considered with respect to New Castle county, its levy court or the individuals composing it. But while the libelant asks that the individuals composing the levy court be cited to appear and answer, it does not pray for any definite, substantive relief against either the levy court, or its members, or the county. It is evident that no relief is sought against the present or former members of the levy court in their individual capacity. It is not charged that there was or is any individual liability on their part for malfeasance, misfeasance or nonfeasance. Further, Shaw, Elliott, Buckson and Burns were not members of the levy court at the time of the happening of the collision, and it would be an absurdity to impute to them in their individual and private capacity fault or liability on account of negligence of a bridge-tender occurring prior to their assumption of official duty.

[1, 2] The injunctive power of a court of equity extends to the members of the levy court, as it does to other officials, to restrain them from acting beyond the scope of their authority or otherwise unlawfully to the irreparable damage of those interested in the due discharge by the levy court of its functions, and as public officers they may be compelled by mandamus to perform a plain statutory duty. This appears from numerous cases in the courts of Delaware. The controversy now before the court is restricted to the point whether a proceeding in personam for damages for a maritime tort can be sustained in this court sitting in admiralty against a county of Delaware or the levy court or its members as representing the county. The law is settled in Delaware that no action of tort lies against a county or its levy court for the recovery of damages. Carter v. Levy Court, 8 Houst. (Del.) 14, 31 Atl. 715; Duncan v. Willits, 4 Pennewill (Del.) 493, 57 Atl. 369; Mayor & Council v. Ewing, 2 Pennewill (Del.) 66, 105, 43 Atl. 305. This is not disputed by the libelant. On the contrary, in its brief it is stated that:

"Under the decisions of the state of Delaware, no action of tort can be maintained against the Levy Court Commissioners of a county, * * * upon the theory that counties or other political subdivisions of the state are under no liability in respect to torts, especially to recover damages suffered in consequence of neglect to repair county roads or bridges, except as imposed or declared by statute."

The libelant, however, relying upon Workman v. New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, and O'Keefe v. Staples Coal Co. (D. C.) 201 Fed. 131, contends that this rule "has no application in the courts of the United States, sitting in admiralty, for the recovery of damages against a county or other political subdivision of a state, where the cause of action relates to a maritime wrong committed upon

navigable waters of the United States." This proposition is, I think, too broad.

A municipal corporation or other organized political district of a state having a general capacity to sue and be sued may be held liable in a court of admiralty in an action in personam for damages resulting from negligence or other tort on the part of its officers or agents while acting in their representative character, where the principles of maritime law as recognized by the Constitution and laws of the United States justify the granting of such relief. The circumstance that at the time of the commission of the tort such corporation or district was engaged in the discharge of a governmental or sovereign rather than a subordinate or local function is immaterial. And where such corporation or organized district possesses such general capacity to sue and be sued it is not competent for the state to provide that such corporation or district shall enjoy immunity from accountability in a proceeding in personam in a court of admiralty for the recovery of damages for a maritime tort committed by it through its officers or agents. In such case it is beyond the power of the state to defeat or render nugatory rights and liabilities created and recognized by the paramount authority of the Constitution and laws of the United States. But where a board of public officers, such as the levy court in Delaware, is by the law of its being incapable, owing to its lack of corporate organization, of being sued in any action of tort in a state court, I am not aware of any principle on which proceedings in personam against it for a tort can be sustained in a federal court sitting in admiralty. Neither Workman v. New York nor O'Keefe v. Staples Coal Co. goes to that extent. In the former case the Supreme Court sustained a libel in personam against New York City for the recovery of damages for injuries to a barkentine from a steam fire-boat owned by the city and under the control and management of its fire department. It was contended in behalf of the city that in the operation of its fire department it was acting in a governmental and sovereign capacity and hence, under the local law, it was not liable to suit. But it was held that the city having the general capacity to sue and be sued could not successfully interpose as a shield for its protection from the consequences of the negligence of one of its departments and agencies such claim of sovereign immunity. The court through Chief Justice White said:

"The proposition then which we must first consider may be thus stated: Although by the maritime law the duty rests upon courts of admiralty to afford redress for every injury to person or property where the subject-matter is within the cognizance of such courts and when the wrongdoer is amenable to process, nevertheless the admiralty courts must deny all relief whenever redress for a wrong would not be afforded by the local law of a particular state or the course of decisions therein. And this, not because, by the rule prevailing in the state, the wrongdoer is not generally responsible and usually subject to process of courts of justice, but because in the commission of a particular act causing direct injury to a person or property it is considered, by the local decisions, that the wrongdoer is endowed with all the attributes of sovereignty, and therefore as to injuries by it done to others in the assumed sovereign character, courts are unable to administer justice by affording redress for the wrong inflicted. The practical destruction of a uniform maritime law which must arise from this premise, is made manifest when

it is considered that if it be true that the principles of the general maritime law giving relief for every character of maritime tort where the wrong-doer is subject to the jurisdiction of admiralty courts, can be overthrown by conflicting decisions of state courts, it would follow that there would be no general maritime law for the redress of wrongs, as such law would be necessarily one thing in one state and one in another; one thing in one port of the United States and a different thing in some other port. As the power to change state laws or state decisions rests with the state authorities by which such laws are enacted or decisions rendered, it would come to pass that the maritime law affording relief for wrongs done, instead of being general and ever abiding, would be purely local—would be one thing to-day and another thing to-morrow. That the confusion to result would amount to the abrogation of a uniform maritime law is at once patent. * * * The disappearance of all symmetry in the maritime law and the law on the other subjects referred to, which would thus arise, would, however, not be the only evil springing from the application of the principle relied on, since the maritime law which would survive would have imbedded in it a denial of justice. This must be the inevitable consequence of admitting the proposition which assumes that the maritime law disregards the rights of individuals to be protected in their persons and property from wrongful injury, by recognizing that those who are amenable to the jurisdiction of courts of admiralty are nevertheless endowed with a supposed governmental attribute by which they can inflict injury upon the person or property of another, and yet escape all responsibility therefor. * * * It is not gainsaid that, as a general rule, municipal corporations, like individuals, may be sued; in other words, that they are amenable to judicial process for the purpose of compelling performance of their obligations. * * * As a result of the general principle by which a municipal corporation has the capacity to sue and be sued, it follows that there is no limitation taking such corporations out of the reach of the process of a court of admiralty, as such courts, within the limit of their jurisdiction, may reach persons having a general capacity to stand in judgment. * * * The contention, is, although the corporation had general capacity to stand in judgment, and was therefore subject to the process of a court of admiralty, nevertheless the admiralty court would afford no redress against the city for the tort complained of, because under the local law the corporation as to some of its administrative acts was entitled to be considered as having a dual capacity, one private, the other public or governmental, and as to all maritime wrongs committed in the performance of the latter functions it should be treated by the maritime law as a sovereign. But the maritime law affords no justification for this contention, and no example is found in such law, where one who is subject to suit and amenable to process is allowed to escape liability for the commission of a maritime tort, upon the theory relied upon."

The fire department of the city had been joined as a respondent. The libel was dismissed as to that department by the lower courts, and the Supreme Court said:

"The courts below concurred in dismissing the libel as against the fire department of the city of New York, upon the contention made in the answer of the department that under the provisions of a named statute of the state of New York, the fire department of the city of New York was neither a corporation nor a quasi-corporation, but was merely a department of the city. As no controversy is made respecting the correctness of the decree in this particular, we dismiss this subject from view."

It is manifest from the opinion that the liability of the city was predicated upon the fact, as one of the essentials to a recovery, that the city was "subject to suit and amenable to process,"—that it had "the capacity to sue and be sued,"—that it had "a general capacity to stand in judgment."

The decision in O'Keefe v. Staples Coal Co. (D. C.) 201 Fed. 131, followed Workman v. New York, and held that the county of Bristol in Massachusetts might be held liable in admiralty for a maritime tort brought about by the negligence of its employés in the operation of a draw-bridge, although they were in the performance of a public duty and under the law of the state the county is exempted from liability in such case. Section 1, c. 20, Rev. Laws Mass., provides:

"Each county shall continue a body politic and corporate for the following purposes: To sue and be sued, to purchase and hold, for the use of the county, personal estate and land lying within its limits, and to make necessary contracts and do necessary acts relative to its property and affairs."

It was urged by way of defense that:

"By the law of Massachusetts a municipal corporation or similar body charged with a public duty imposed by statute, is not liable for the negligence of its agents or servants engaged in the actual performance of that duty."

But the court, referring to Workman v. New York, said:

"This decision is conclusive against the excepting parties on the present question. The county, as is not disputed, is a body amenable to the process of this court, and having a general capacity to stand in judgment."

At common law no action of tort would lie against a county for damages resulting from negligence. In Thomas v. Sorrell, Vaughn, 330, 340, it is said:

"If a man have particular damage by a foundrous way, he is generally without remedy, although the nusance is to be punisht by the King. The reason is, because a foundrous way, a decayed bridge, or the like, are commonly to be repaired by some township, vill, hamlet, or a county who are not corporate, and therefore no action lyes against them for a particular damage, but their neglects are to be presented, and they punisht by fine to the King. But if a particular person, or body corporate, be to repair a certain highway, or portion of it, or a bridge, and a man is endamaged particularly by the foundrousness of the way, or decay of the bridge, he may have his action against the person or body corporate who ought to repair for his damage, because he can bring his action against them; but where there is no person against whom to bring his action, it is as if a man be damaged by one that cannot be known."

In Russell v. Men of Devon, 2 Term, *661, it was held that no action would lie by an individual against the inhabitants of a county for an injury sustained in consequence of a county bridge being out of repair. It was argued that "the county were bound to repair this bridge; they omitted to do so; and the plaintiffs received a particular injury by that omission." Lord Kenyon, C. J., among other things, said:

"Many of the principles laid down by the plaintiff's counsel cannot be controverted; as that an action would lie by an individual for any injury which he has sustained against any other individual who is bound to repair. But the question here is, whether this body of men, who are sued in the present action, are a corporation, or quasi a corporation, against whom such an action can be maintained. If it be reasonable that they should be by law liable to such an action, recourse must be had to the legislature for that purpose. But it has been said that the action ought to be maintained by borrowing the rules of analogy from the statutes of hue and cry; but I think those statutes prove the very reverse. The reason of the statute of Winton was this; as the hundred were bound to keep watch and ward, it was supposed that those irregularities which led to robbery must have

happened by their neglect. But it was never imagined that the hundred could have been compelled to make satisfaction, till the statute gave that remedy; and most undoubtedly no such action could have been maintained against them before that time. Therefore when the case called for a remedy, the legislature interposed; but they only gave the remedy in that particular case and did not give it in any other case in which the neglect of the hundred had produced any injury to individuals. And when they gave the action they virtually gave the means of maintaining that action; they converted the hundred into a corporation for that purpose; but it does not follow that, in this case where the legislature has not given the remedy, this action can be maintained."

In Delaware the county, with its inhabitants, considered apart from the machinery by which its affairs are regulated, is merely a political division of the state and the levy court is a board of officers charged by law with the performance of certain duties pertaining to the welfare of those inhabiting, holding property or otherwise interested in the political division represented by it. The government of a state as a whole or of a county as part thereof necessarily requires agencies or instrumentalities by which such government is to be effected. But such agencies or instrumentalities must not be confounded with or mistaken for the state or the county. The levy court is composed of commissioners who represent it and the county, but not for the purpose of being sued by way of substitution for the court or county. State officers represent the state, but could not be substituted for the state in the prosecution of claims against it. On an assumption that the county or the levy court in its representative capacity might be sued in an action of tort for damages, it might well be that service of the summons directed to it might be made upon the commissioners or one or more of them. But this, as has been shown, is an unwarranted assumption. It appears from the Delaware cases that the doctrine of non-liability of a county or its levy court as representing it in an action of tort for damages is not based solely upon its unincorporate character. In Carter v. Levy Court, 8 Houst. (Del.) 14, 31 Atl. 715, where it was held that no action of tort will lie against a county in Delaware or its levy court, Comegys, C. J., said:

"The overwhelming weight of authority seemed to be in favor of the proposition that no action of tort will lie against such a public division of the state as the county, or such a body as the levy court."

In Duncan v. Willits, 4 Pennewill (Del.) 493, 57 Atl. 369, Spruance, J., said:

"It was the rule of the common law that counties could not be sued, and that their capacity in that regard depended upon statutory enactment; for the reason that the several counties of a state are political divisions exercising a part of the sovereign power of the state."

In Mayor & Council v. Ewing, 2 Pennewill (Del.) 66, 105, 43 Atl. 305, 308, the Supreme Court of Delaware said:

"It is well settled that an action of tort for injuries from defective highways will not lie against a county, in the absence of a statute giving such action. Carter v. Wilds et al., Commissioners of the Levy Court of Kent County, 8 Houst. 14 [31 Atl. 715]; Hill v. Boston, 122 Mass. 344 [23 Am. Rep. 332]; Templeton v. Linn County, 22 Or. 313 [29 Pac. 795, 15 L. R. A. 730]. Nor could such an action against the state be maintained."

There are two separate and distinct reasons why in the courts of Delaware neither the levy court nor the county can be held liable, in damages in an action of tort. One is that such an action does not lie against the county, or the levy court as representing the county, as a political division of the state, and as such immune by reason of the state sovereignty from an adverse action for damages, unless authorized by the state. The other and wholly independent reason is that, unlike public school districts, neither the levy court nor the county possesses corporate or quasi corporate organization of such a nature as to render it capable of being sued for or held in damages. Neither has a corporate seal nor, expressly or by implication, the capacity to sue and be sued.

This is not, aside from the steam-tug, a suit in rem, but purely in personam. Nor is it a suit to hold the bridge-tender or the members of the levy court individually and personally liable in damages, but to subject the levy court in its representative capacity to such liability. It may be, though it is unnecessary to express an opinion on the point, that the bridge-tender and such of the individual members of the levy court, if any, as may have been guilty of negligence either personally or through persons acting for them, resulting in the injury complained of, could be held in damages in a proper proceeding in admiralty. But this is not such a proceeding.

For the reasons expressed in this opinion the exceptions must be sustained and the libel dismissed so far as relief against New Castle county, its levy court, or the present or former members thereof, is concerned.