## THE WEST POINT.
## THE MOTOR BOAT NO. 16050.
### Nos. 7023, 7024.

District Court, E. D. Virginia,
Norfolk Division.

Feb. 17, 1947.

R. Arthur Jett and Venable, Miller, Parsons & Kyle, all of Norfolk, Va., for libellants.

John W. Oast, Jr. and White & Davis, all of Norfolk, Va., for respondents—excluding Government.

Harry H. Holt, Jr., U. S. Atty., and Llewellyn S. Richardson, Asst. U. S. Atty., both of Norfolk, Va., and John T. Casey, of Washington, D. C., for United States.

HUTCHESON, District Judge.

These cases involve libels filed by Charles C. Tinsley and John H. Alexander, who at the time of the occurrences herein cited were officers of the United States Navy. The facts and the questions involved in both cases are so closely related that they may be considered together in connection with the issues before the Court at this time.

It appears from the proceedings that on the afternoon of October 9, 1944, the libellants were on board the Motor Boat No. 16050, owned by the United States, for the purpose of being transported from the Norfolk Navy Yard, Portsmouth, Virginia, to a dock in the City of Norfolk, Virginia. While enroute the motor boat was involved in a collision with the ferry boat West Point, owned and operated by the City of Portsmouth, Virginia, a municipal corporation, and the County of Norfolk, Virginia, a political subdivision of that state, trading as Norfolk County Ferries. It is alleged that the libellants received certain injuries as a result of the collision and to recover therefor have filed separate libels. The actions are in the nature of in rem proceedings against the ferry boat West Point, and in personam proceedings against the City of Portsmouth and the County of Norfolk, and the United States of America.

The City of Portsmouth has filed exceptions to the libels, maintaining that the libellants have no maritime liens against the ferry boat West Point and no right of action against the City of Portsmouth. The City has also filed an exceptive allegation

alleging that no notice of claim has been given it as required by Section 6043a of the Code of Virginia, which allegation is urged as a further reason for a denial of the maritime lien and claim.

The County of Norfolk has filed an exception setting out its status as a political subdivision of 'the State of Virginia and claiming immunity from suit. The County has tendered a further exception alleging that the claims asserted have never been presented to the Board of Supervisors of the County and no process has been served on the Commonwealth's Attorney of the County, which it is claimed is an essential prerequisite to any action against the County pursuant to the provisions of Sections 2686 and 2764 of the Code of Virginia.

The United States sets out as grounds for its exception (1) the fact that the libellants are members of the United States Navy and as such may not sue the Government; and (2) the Government has not consented to said suits.

On the foregoing grounds the parties named contend that the libels should be dismissed.

The last pleading to be considered is the Impleading Petition filed jointly by the County of Norfolk and the City of Portsmouth on October 29, 1945, to have the United States impleaded under the 56 Admiralty Rule of the Supreme Court, 28 U.S. C.A. following section 723. The petitioners set forth with particularity facts to show that the United States in the operation of its motor boat No. 16050 on which the libellants, officers in the Navy, were passengers, was negligent and that such negligence caused the injuries for which the libellants are seeking to recover. There was no claim of injury to the petitioners or their property. The petition is filed pursuant to the Public Vessels Act, 46 U.S.C.A. §§ 781–790. On February 17, 1947, an order was entered amending the Impleading Petition alleging that the United States was either solely negligent or partly negligent. The original petition had alleged that the United States was solely negligent. In view of the allegation of partial negligence the prayer of the petition was amended to provide that in the event the United States should be held to have concurred in the negligence attributed to the petitioners, the Court should " * * * enter a decree providing for a recovery by the petitioners from the United States by way of remedy over, contribution or otherwise to these petitioners * * *."

The law applicable to a determination of the questions presented will be considered in the order enumerated above.

The immunity of a city against an action in admiralty was discussed by the District Court of Maryland in 1886 in the case of The F. C. Latrobe, 28 F. 377, 379, which involved a libel against an ice boat owned and operated by the City of Baltimore. The City was held liable in personam. When dismissing the in rem feature of the action, the Court used the following language: "And when, in the preformance of any duty, either imposed upon or assumed by it, the municipality employs maritime instrumentalities, I think it should be held answerable under the maritime law, with those exceptions only which public policy absolutely requires. If the vessel belonging to the municipality is used by it as a necessary instrument in the exercise of some municipal function, then, as was held by the chief justice in the case of The Fidelity, [16 Blatchf. 569,] public policy require that the municipality shall not be deprived of its use, * * *."

It is contended in the instant case that the ferry boat West Point is not used by the City of Portsmouth as a necessary instrument in the exercise of a municipal function. Libellants cite as authority for this contention City of Portsmouth v. Madrey, 168 Va. 517, 191 S.E. 595, 598. In that case the Supreme Court of Appeals of Virginia, in deciding the case, used the following language:

"Municipalities which operate ferries for profit must, in a proper case, respond in damages as must private owners, they are discharging no public duty.

"'A municipality which maintains and operates a ferry, in part for profit, is subject to all the liability of a common carrier.' McQuillin, Municipal Corporations (2d Ed.), § 2858."

■ Although that was an action against the City of Portsmouth for injuries sustained by passengers while disembarking from the ferry, the pleadings did not raise the question of the immunity of a municipality. The action was not a suit in admiralty but was brought in the state courts. It is of interest to note that while, in the opinion the Court stated that the City of Portsmouth and County of Norfolk were joint owners and operators of the ferries, the action was only against the City and the County was not made a party. While the language of the Court just quoted concerning the duty of the City in operating a ferry may be dicta and not binding on this Court, it is the opinion of the Court that the quotation correctly states the law as far as the City of Portsmouth is concerned in the instant case, in that the operation of the ferry is not a public duty and therefore the City would be subject to a proceeding in admiralty. See also Benedict on Admiralty, 6th Ed., Vol. 1, Sec. 216. In Workman v. New York, 179 U.S. 552, 21 S.Ct. 212, 45 L. Ed. 314, the Supreme Court sustained a libel in personam against New York City for recovery of damages for injuries to a barkentine caused by a steam fire boat owned by the City and under the control and management of its fire department. It was held that the City having the general capacity to sue and be sued, could not successfully interpose a claim of sovereign immunity from the consequences of negligence of one of its departments or agencies. It would appear that the Workman case presents a stronger case for the City than the case at bar by reason of the fact that there was involved a fire boat under the control and management of the fire department, operating presumably with no profit, whereas in the instant case the vessel involved was a ferry boat operating for profit.

■ The second question presented by the City involves the procedure under Section 6043a of the Code of Virginia, which reads as follows: "Notice to be given cities and towns of claims for damages for negligence.—No action shall be maintained against any city or town for injury to any person or property. or for wrongful death alleged to have been sustained by reason of the negligence of the city or town, or of any officer, agent or employee thereof, unless a written statement by the claimant, his agent, attorney or representative, of the nature of the claim and of the time and place at which the injury is alleged to have occurred or been received, shall have been filed with the city attorney or town attorney, or with the mayor, or chief executive, within sixty days after such cause of action shall have accrued, except where the claimant is an infant or non compos mentis, or the injured party dies within such sixty days, such statement may be filed within one hundred and twenty days; and statements pursuant to this act shall be valid, notwithstanding any charter provision of any city or town."

In Frame v. City of New York, D.C., 34 F.Supp. 194, the plaintiff brought an action against the City of New York under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., as incorporated by reference in the Jones Act, 46 U.S.C.A. § 688, for injuries suffered while employed aboard a ferry operated by the City. The New York statute appears to be substantially similar to the Virginia statute and is applicable to the City of New York. The plaintiff failed to file notice of intention to sue as required by the New York statute. The defendant moved to dismiss the complaint on the ground that such failure barred the plaintiff from maintaining his action. It was held that the requirement of the statute that a claim be presented to the Comptroller of New York City before commencing an action against the City was inconsistent with the uniform operation of the maritime law in all states, and is not applicable in an action under the Jones Act, since the maritime law can not be deflected or impaired by state statutes. It is also contended that Section 525 of the Soldiers' and Sailors' Civil Relief Act, Title 50, U.S.C.A.Appendix, abrogates Section 6043a, Virginia Code, as to the libellants in these proceedings. Section 525 of that act excludes the period of military service in computing a period to be limited by any law, regulation or order for the bringing of any action or proceeding in any

court. In Cumulative Pocket Parts of Title 50 U.S.C.A.Appendix, Annotation 12, is cited Calderon v. City of New York, 184 Misc. 1057, 1945, 55 N.Y.S.2d 674, where plaintiff was in the military service at the time he was injured due to the city's alleged negligence, and for the six months during which his notice of claim should have been served, plaintiff was not required to serve notice within that period.

It would appear that under the authorities the exceptions of the City of Portsmouth should be denied, with respect to both the in rem and in personam aspects of the case.

The questions raised by the exceptions of the County present more difficulty.

In support of their contention that a county may be sued within the rule applying to municipal corporations, libellants cite the case of O'Keefe v. Staples Coal Company, D.C., 201 F. 131, 134. That case held a county in Massachusetts liable in admiralty for a maritime tort caused by the negligence of its employees in the operation of a drawbridge, although they were in the performance of a public duty, and under the law of Massachusetts the County is exempt from liability in such case. Section 1, Chapter 20, Rev.Laws Mass., reads as follows: "Each county shall continue a body politic and corporate for the following purposes: *to sue and be sued,* to purchase and hold, for the use of the county, personal estate and land lying within its limits, and to make necessary contracts and do necessary acts relative to its property and affairs." (Italics supplied.)

The Court followed Workman v. New York, supra, and held that it was controlling, using the following language: "This decision (i.e., Workman v. New York) is conclusive against the excepting parties on the present question. The county, as is not disputed, is a body amenable to the process of this court and *having a general capacity to stand in judgment. * * *.* The responsibility for the maritime tort thus committed was upon the county by the maritime law, if the operation of the draw was at the time controlled by the county. No exemption from liability for such negligence to which it may be entitled under the local law affords it a defense in an admiralty suit before this court." (Italics supplied.)

In The Alex Y. Hanna, D.C., 246 F. 157, which was a later case, a contrary conclusion was reached on a similar set of facts but involving the status of one of the counties of the State of Delaware. The action was against the tug Alex Y. Hanna and the levy court commissioners of New Castle County, Delaware. It was contended that the levy court commissioners were charged with governing the county and liable for the negligent operation of the drawbridge maintained by New Castle County. Both the Workman and Staples cases were cited in support of the contention that an action in personam could be maintained against the county and its commissioners. In dismissing the libel as to the county the Court pointed out that the Workman case turned on the point that local law could not abrogate the admiralty jurisdiction when such local law attempts to create immunity from suit where jurisdiction to sue has previously vested. At common law no action of tort would lie against a county for damages resulting from negligence. The Court refers to the Massachusetts statute which was controlling in the Staples case, and which, as previously mentioned, vests the county with the general capacity to sue and be sued; whereas, in Delaware, counties are not vested with the general capacity to be sued, the law of that state being that no action of tort lies against the county or its levy court. In dismissing the libel as to the county, the Court assigns as one of its reasons: "that such an action does not lie against the county, or the levy court as representing the county, as a political division of the state, and as such immune by reason of the state sovereignty from an adverse action for damages, unless authorized by the statute".

The Onteora, D.C., 298 F. 553, involved a libel against a ferry boat owned by the Palisades Interstate Park Commission, a state agency, for an injury suffered aboard the ferry. The Court dismissed the action both as to its in rem and in personam

features. On page 554 of 298 F. the Court used the following language:

"The case presents two quite separate questions: First, whether the claimants may be sued for a tort in any form; second, whether their property may be arrested. The first question is one of the laws of New York and New Jersey, and must, so far as I can learn from the books, be answered in the negative. The lower courts at least have held that the claimants, despite their corporate form, are a state agency, and as such exempt from liability as tort-feasors. * * *

"The libellant's argument is that the corporate form given to the claimants, together with their express subjection to suit, shows an intention to make them generally liable like a municipality, and that municipalities, except in their governmental functions, are liable as tort-feasors * * *. But the distinction in respect of municipalities has never been applied to a state, which can be made liable only when it has given an express consent. * * * I can see no valid distinction, whether the proposed defendant be the state itself or a state agency. * * *"

It should be pointed out, however, that the court found the operation of a ferry by the commissioners for the purpose of carrying passengers to Interstate Park Public Recreation Center was a governmental function.

■ From the foregoing it would appear that the question is one to be determined by the law of the state and accordingly reference should be had to the applicable statutes of the Code of Virginia, which are as follows:

"Sec. 2686. How counties may sue and be sued.—Counties may sue in their own names for *forfeitures, fines, or penalties given by law to such counties, or upon contracts made with them;* and, subject to the provisions of section twenty-seven hundred and sixty-four, may be sued in their own names in the circuit court of such county, *and the process instituting such suit may be executed by being served on the Commonwealth's Attorney of said county."* (Italics supplied.)

"Sec. 2764. When disallowance of claim, final; exception; when no execution to be issued.—The determination of the board of supervisors of any county, disallowing a claim, in whole or in part, shall be final and conclusive, and a perpetual bar to any action in any court founded on such claim, *unless an appeal be taken from the decision* and determination of such board, *or unless such board shall consent and agree to the institution of an action by such claimant against the county;* but, when the board of supervisors shall refuse or neglect to act upon any claim duly presented to them, this section shall not be so construed as to prevent the institution of an action by such claimant. No execution shall be issued upon any judgment recovered against a county, board of supervisors, or against any officer of the county, when the judgment should be paid by the county, but the same shall be provided for by the board of supervisors in the next county levy, and paid by the treasurer as other county charges." (Italics supplied).

In Fry v. County of Albemarle, 86 Va. 195, 9 S.E. 1004, 1005, 19 Am.St.Rep. 879, the Virginia court held that an action may not be maintained against a county under Section 2686 for personal injuries caused by the negligence of a convict of the state penitentiary while working on a public road under the direction of the county. In discussing the status of the county in the governmental system of the State of Virginia, the Court used the following language:

"Suits against the state are allowed by law under certain regulations, and, in certain specified and enumerated cases, counties in this state are authorized to sue and are suable in the circuit court held for such county in their own names, but these are limited. (The court then refers to Section 2686 of the Code.) The legislature has given a remedy in cases growing out of contracts with counties, but it has given no remedy against a county for the negligence of a public officer or servant appointed by law. * * *

"The rules established by the courts concerning municipal corporations have but slight application to counties *organized as ours are.* Our counties are parts of the state; political subdivisions of the state; created by the sovereign power for the ex-

ercise of the functions of local government. * * *. *'They are local subdivisions of a state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them.'* [Hamilton County,] Board [of Com'rs of] v. Mighels, 7 Ohio St. 109. *A municipal corporation proper is created mainly for the interest, advantage, and convenience of its locality and its people. * * *.'* (Italics supplied).

The Court concludes on page 199 of 86 Va., on page 1006 of 9 S.E., 19 Am.St.Rep. 879: "We have been referred to numerous decisions concerning the character of the duty required of these and other officials similarly situated, drawing a distinction where the duty is for the benefit of the general public and where it is for the benefit of a corporation, but we do not cite them. They are more distinctly applicable to municipal corporations proper than to such organizations as counties, which are rather political subdivisions of the state, or, as sometimes denominated, 'quasi corporations.' "

The Court affirmed the judgment of the lower court, dismissing the action against the county. See also Dillwood v. Riecks, 1919, 42 Cal.App. 602, 184 P. 35.

In Nelson County v. Loving, 126 Va. 283, 101 S.E. 406, the Court held that the county is a political subdivision of the state and occupies the same position occupied by the state with respect to suits against it for damages for personal injuries, and cited Fry v. County of Albemarle, supra. However, the case before the Court at that time concerned an action arising out of an injury to private property damaged by the state for public use.

■ It would seem from the authorities cited that a county in Virginia may not be sued without the consent of the county as provided in Section 2764, and it does not appear that such consent has been given in this case.

This conclusion does not seem inconsistent with Frame v. City of New York, supra, in view of the difference between the status of a city and the status of a county under the Virginia law.

Having disposed of the question of the suability of a Virginia county when sued in personam in admiralty, there now remains to consider the question of whether the ferryboat West Point is likewise immune from an in rem proceeding by virtue of Norfolk County's joint ownership with the City of Portsmouth of all ferry properties.

Section 2049, Va.Code "The ferries which now ply, by authority of law, between the cities of Portsmouth and Norfolk, and Wellington Point or Berkeley, known as Norfolk county ferries, shall continue to run as now authorized by law, and shall be the joint and equal property of said city of Portsmouth and the county of Norfolk."

■ The only question to be answered at this point is whether the plaintiff's libel in rem against the West Point may be entertained. Since the City of Portsmouth is suable both in rem and in personam, it follows that the West Point which is jointly owned by the City and used for non-governmental purpose is subject to a libel in rem.

■ The part ownership of the municipality in the vessel removes any cloak of immunity with which the vessel might have been vested if entirely owned by the state agency, Norfolk County. It further appears that to be exempt from suit the vessel would have to be engaged in a governmental function in addition to being owned solely by the state or its agency. See Ex parte State of New York, No. 2, 256 U.S. 503, 41 S.Ct. 592, 65 L.Ed. 1063; The Western Maid, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299; The Charlotte, 2 Cir., 299 F. 595; The Onteora, D.C., 298 F. 553; The Lisbon, 9 Cir., 3 F.2d 408.

It therefore follows that the exceptions filed by Norfolk County as to the libel should be sustained in so far as it relates to the proceedings in personam but should be rejected in so far as it may be considered as affecting the in rem proceeding against the ferry boat West Point.

The final question involved concerns the rights of libellants, being officers of the United States Navy, to sue the Government for injuries alleged to have been caused by a public vessel of the United

States. This question is to be determined by the construction given the Public Vessels Act, § 1, 46 U.S.C.A. § 781.

In deciding this question I find it sufficient to merely cite Dobson v. United States, 2 Cir., 27 F.2d 807, and Bradey v. United States, 151 F.2d 742, decided by the Circuit Court of Appeals, 2nd Circuit, which held that libellants similarly situated could not sue the United States. Certiorari was denied in both cases.

While the law appears to be settled on the right of the libellants to sue the United States in their own right, no case in point has been brought to the Court's attention concerning the right of the respondents to implead the United States under the 56 Admiralty Rule and pursuant to the provisions of The Public Vessels Act, supra. Respondents argue that the potential right of libellants to recover full judgment against them notwithstanding a showing of partial negligence on the part of the United States (the libellants would be barred from direct recovery against the United States by reason of their status of naval officers), is such an injury caused by a public vessel as is contemplated by the Public Vessels Act and for which the United States is amenable to suit by an impleading proceeding instituted by the respondents herein.

The question appears to be one of first impression and of rather far-reaching consequence.

In the absence of controlling authority, if the Court were to come to the conclusion that the United States should be released from the proceedings, and we should go to trial and take testimony and dispose of the case, and it should develop on appeal that I was wrong and that the United States should not have been released, the case would have to come back and be tried all over again on the issue of negligence as between the "West Point" and the United States. If I reserve my decision on this particular point until after the termination of the entire case and then reach a conclusion, and the case is appealed, as doubtless it will be, the appellate court would have the entire facts in the record, that is, those facts relied upon by the "West Point" to show the negligence of the United States, and the reverse. Then the full case would be before the Court, which would eliminate the necessity of taking further testimony in the event of a reversal. Decision upon this point is therefore reserved.