## BRADEY v. UNITED STATES.

### No. 44.

Circuit Court of Appeals, Second Circuit.

Nov. 2, 1945.

Writ of Certiorari Denied Jan. 28, 1946.

See 66 S.Ct. 484.

Simone N. Gazan, of New York City, for appellant.

Edward L. Smith, of New York City, for appellee.

Before L. HAND, SWAN and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a decree in the admiralty which upon stipulated facts dismissed a libel against the United States. The libellant, an administratrix, was the mother of the intestate—a fireman in the service of the Navy on board the destroyer, "Parrott,"—who died in 1944 as the result of injuries caused by a collision between that ship and the "John Morton", a vessel owned by the United States. The libel alleged, and for the purposes of this appeal it must be assumed, that the collision was due, in part at any rate, to the negligence of those on board the "John Morton"; so that the only question before us is whether in these circumstances, the United States has submitted to the jurisdiction of the court. As the collision happened within the territorial waters of the State of Virginia: i.e., within the port of Norfolk, the libellant relies upon a statute of that state (§§ 5786, 5787, 5788, of the Code of Virginia), which (following Lord Campbell's Act) gives a right of action to the personal representatives of a person killed by the "wrongful act, neglect, or default" of another, whenever the deceased might have recovered, if he had not died. The defense is that the "John Morton" was bound for Newport News with over one thousand tons of soft coal belonging to the Army, where she was to complete her cargo by lading munitions of war, after which she was to sail for the European theatre of war. The respondent asserts that this service made her a "public," and not a "merchant," vessel of the United States; that therefore jurisdiction over the claim must depend upon the Public Vessels Act (46 U.S.C.A. § 781); and that the decedent was not among those protected by that act. As an alternative, it asserts that, even though the ship was a "merchant" vessel, the Suits in Admiralty Act (46 U.S.C.A. § 742) also did not confer any jurisdiction upon the court.

We may at the outset lay aside the Suits in Admiralty Act, because plainly, the offending ship was not a "merchant," but a "public," vessel within the meaning of the

Public Vessels Act. The Western Maid, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299; United States Grain Corporation v. Phillips, 261 U.S. 106, 43 S.Ct. 283, 67 L.Ed. 552; The Norman Bridge, D.C., 290 F. 575 (per Ward, J.); United States v. City of New York, D.C., 8 F.2d 270 (per Augustus N. Hand, J.). Those decisions concerned the carriage of food to Europe, or of gold from Europe to pay for food already delivered, after the first World War; and a far more plausible argument could be made that the ships performing such services were "merchant" vessels than can be made in the case of a ship like the "John Morton," bound for a theatre of war, flagrante bello, with a cargo of coal and munitions, consigned to the Army. It is quite true that nothing in the text of the Public Vessels Act bars suit by a member of the armed forces, but in Dobson v. United States, 2 Cir., 27 F.2d 807, cert. den. 278 U.S. 653, 49 S.Ct. 179, 73 L.Ed. 563, we held that, because of the compensation elsewhere provided for such persons, they must be deemed excluded from its protection. That case directly rules here; and, to succeed, the libellant must prevail upon us to overrule it. This she attempts to do on the ground that the course of judicial decision since then discloses a change of attitude towards such sufferers.

We can find no evidence of such a change, nor do we see any antecedent reason to think that we were wrong before. On the contrary, we find warrant in the recent action of Congress for supposing the contrary. The Act of March 24, 1943, 57 Statutes at Large, 45, 50 U.S.C.A.Appendix, § 1291 et seq., declares that "officers and members of crews * * * employed on United States or foreign flag vessels as employees of the United States through the War Shipping Administration, shall, with respect to * * * death, injury * * * or claims arising therefrom * * * have all of the rights * * * under law applicable to citizens of the United States employed as seamen on privately owned and operated American vessels. Such seamen, because of the temporary war time character of their employment by the War Shipping Administration, shall not be considered as officers or employees of the United States for the purposes of the United States Employees Compensation Act." Again: "Any claim referred to in clause (2) * * * shall * * * be enforced pursuant to the provisions of the Suits in Admiralty Act." This appears to us to show that Congress did not expect those in its service upon "public vessels" to enjoy at once the privilege of employees' compensation and the right to recover damages for the same injuries. The compensation provided for the Navy is indeed not the same as that provided under the United States Employees Compensation Act, 5 U.S.C.A. § 751 et seq.; but that makes no difference. We are to assume that each is deemed adequate for the occasion; particularly since it is certain, and does not depend upon proof of fault. We conclude that Congress regards the two remedies as mutually exclusive; and the decree will be affirmed.

Decree affirmed.