**UNITED STATES v. BROOKS (two cases).**
**Nos. 5758, 5759.**

Circuit Court of Appeals
Fourth Circuit.
Aug. 26, 1948.

---

PARKER, Circuit Judge, dissenting.

Paul A. Sweeney, Atty., Dept. of Justice, of Washington, D. C. (Newell A. Clapp, Acting Asst. Atty. Gen., David E. Henderson, U. S. Atty., of Charlotte N. C., and Morton Hollander, Atty., Dept. of Justice, of Washington, D. C., on the brief), for appellant.

Whiteford S. Blakeney, of Charlotte, N. C. (Guthrie, Pierce & Blakeney, of Charlotte, N. C., on the brief), for appellees.

Before PARKER and DOBIE, Circuit Judges, and WATKINS, District Judge.

DOBIE, Circuit Judge.

Welker Brooks and James Brooks, as Administrator of the Estate of Arthur Brooks, deceased, filed civil actions in the United States District Court for the Western District of North Carolina, against the United States under the Federal Tort Claims Act, 28 U.S.C.A. § 921 et seq. The District Judge, sitting without a jury, entered judgments against the United States in favor of Welker Brooks and James Brooks, Administrator of the Estate of Arthur Brooks. The case is before us on the appeal of the United States from these judgments.

About 8 p. m. on February 17, 1945, Welker Brooks and Arthur Brooks, both enlisted men in the United States Army, were driving with their father, a civilian, in their private automobile on a public highway near Fayetteville, North Carolina. Both soldiers were on leave or furlough, engaged in their private concerns and not on any business connected with their military service. The Brooks automobile collided with an Army truck, operated by a civilian employee of the War Department, which was transporting the members of a Fort Bragg band to Fayetteville. Arthur Brooks was killed and Welker Brooks was seriously injured as a result of the collision, which the District Judge held to be due to the negligence of the driver of the Army truck.

The only question we are called upon to decide is whether Welker Brooks and

James Brooks, as Administrator of the Estate of Arthur Brooks, deceased, have claims against the United States under the provisions of the Federal Tort Claims Act. We think the District Judge erred by answering this question in the affirmative.

This problem of statutory interpretation is close and difficult, due primarily to the inept draftsmanship on the part of Congress in failing to make clear and express provision as to soldiers in the United States Army.

■ It seems crystal clear that the claims here in suit fall literally within the comprehensive words "any claim against the United States, for money only" used in § 410(a) of the Act, without any specific limitation as to the classes of persons who have valid claims under the Act. This fact, however, is not in itself determinative of our problem. The proper approach, we think, was admirably stated by District Judge Chesnut, in Jefferson v. United States, D.C., 77 F.Supp. 706, 711, 712: "It is a familiar rule of statutory construction that the merely literal reading of particular words in an Act can be narrowed by construction where, from the whole subject matter of the particular Act and its setting in the whole governmental scheme, the court can see that the literal import of the phrase used is contrary to established policy and would not accord with the real intention of Congress in passing the Act, and for this purpose we may 'look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail.' Takao Ozawa v. United States, 260 U.S. 178, 43 S.Ct. 65, 67, 67 L.Ed. 199; United States v. Sweet, 245 U.S. 563, 38 S.Ct. 193, 62 L.Ed. 473; United States v. Arizona, 295 U.S. 174, 55 S.Ct. 666, 79 L.Ed. 1371."

■ Manifestly, the purpose of any important enactment of Congress is entitled to very great weight in determining the scope of the enactment. Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026. The purpose of the Legislative Reorganization Act of 1946, 60 Stat. 812, of which the Federal Tort Claims Act is Title IV, is said to be: "To provide for increased efficiency in the legislative branch of the Government." Congress, for many years, had been plagued with a veritable flood of private bills authorizing the payment of money for personal injuries or property damage caused by the tortious conduct of employees of the United States. These bills consumed an appreciable portion of Congressional time and energy. And Congress, by its size and organization, was ill fitted to pass fairly upon these bills. § 131 of the Legislative Reorganization Act of 1946 specifically forbids the introduction of such private bills for claims falling within the ambit of the Act.

While private bills for the relief of *civilians* were indeed legion, exceedingly rare and very far between were such bills for the relief of men in the armed services. In this connection, we may note the following explanatory statement at page 31, Report No. 1400, on S. 2177 (79th Cong., 2d sess.), which became the Legislative Reorganization Act of 1946: "With the expansion of governmental activities in recent years, it becomes especially important to grant to *private* individuals the right to sue the Government in respect to such torts as negligence in the operation of vehicles." (Italics ours.)

■ The soldier, upon enlistment, acquires a special and unique military status, quite different from any relation between the Federal Government and civilians. United States v. Standard Oil Co. of California, 332 U.S. 301, 305, 67 S.Ct. 1604, 91 L.Ed. 2067; In re Morrissey, 137 U.S. 157, 159, 11 S.Ct. 57, 34 L.Ed. 644; In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636. The soldier is subject to military discipline even while at play, and his desertion is a serious crime, punishable at times by death. Rarely, if ever, is a soldier referred to by Congress as a "private individual."

Congress has established a complete and comprehensive administrative system of compensation to take care of the death of, or injuries to, servicemen. Monthly pension payments for disabling injuries, pensions to the widow, children or dependent parents for the death of a serviceman, full pay during periods of incapacity, medi-

cal attention and hospitalization, life insurance at rates far below the rates of commercial companies, employment preferences, education—all these and many other benefits are distinctly given to servicemen. Nor have the States been niggardly to veterans. Certainly there is force in the suggestion that Congress thought this system of benefits took adequate care of soldiers and intended thereby to exclude soldiers from the right to sue the United States for personal injuries received in the service.

In various statutes by which Congress has established this complete and comprehensive administrative system of compensation for damages resulting from the injury or death of a soldier, it has made no distinction between injuries received while a soldier was on furlough or leave, and injuries received while a soldier was on active duty. If the injury or disease is incurred during the period of his military service, it is service-connected, and is compensable, even though not service-caused. The fact that payments were made by the United States on account of the death of Arthur L. Brooks, and the injuries of his brother Welker, shows the practice where the soldier is on leave.

In cognate Congressional statutes, wherein the United States has waived its traditional immunity from suit for tort claims, these statutes have been judicially interpreted as inapplicable to members of the armed services. Thus, the Public Vessels Act, 46 U.S.C.A. § 781 et seq., authorized: "a libel in personam * * * against the United States * * * for damages caused by a public vessel of the United States * * *." Yet it was held that there was no claim against the United States for the death of naval officers. Speaking for a unanimous Court, Circuit Judge Swan, in Dobson v. United States, 2 Cir., 27 F.2d 807, 808, 809, certiorari denied 278 U.S. 653, 49 S.Ct. 179, 73 L.Ed. 563, used this trenchant language:

"Verbally, there is nothing which excludes liability for damage to property or person of officers or crew. * * *

"Nevertheless the construction contended for by appellants involves so radical a departure from the government's long-standing policy with respect to the personnel of its naval forces that we cannot believe the act should be given such a meaning. The statute itself does not specify who may maintain suits under it. To allow suit by the officers and crew of the public vessel for damage caused by it to them would be too great a reversal of policy to be enacted by such general terms. The Act of October 6, 1917, 40 Stat. 389, 34 U.S.C.A. §§ 981, 982, directs the Paymaster General of the Navy to reimburse officers, enlisted men, and others in the naval service who suffer loss or destruction of or damage to their personal property in the naval service * * *.

"Chapter 3, Title 38, United States Code, 38 U.S.C.A. §§ 151-206, provides an elaborate pension system for personal injury and loss of life incurred by officers and enlisted men in the navy. These pensions may be thought an inadequate substitute for the recovery of full damages under the Public Vessels Act of March 3, 1925, but they were well known to all who entered the naval service. * * * If it had been the purpose to change that policy as respects officers and seamen of the navy injured by the unseaworthiness of a public vessel, or by the fault of one another, because that is what in the end it comes to, we cannot think it would have been left to such general language as is to be found in the above-quoted section 1. * * *

"We believe that Congress meant to leave upon the members of the naval forces the same risks of injuries suffered in the service of the United States as they had before."

In Bradey v. United States, 2 Cir., 151 F.2d 742, 743, certiorari denied 326 U.S. 795, 66 S.Ct. 484, 90 L.Ed. 483, rehearing denied 328 U.S. 880, 66 S.Ct. 1348, 90 L. Ed. 1647, Circuit Judge Learned Hand stated:

"It is quite true that nothing in the text of the Public Vessels Act bars suit by a member of the armed forces, but in Dobson v. United States, 2 Cir., 27 F.2d 807, certiorari denied 278 U.S. 653, 49 S.Ct. 179, 73 L.Ed. 563, we held that, because of the compensation elsewhere provided for such

persons, they must be deemed excluded from its protection. That case directly rules here; and, to succeed, the libellant must prevail upon us to overrule it. This she attempts to do on the ground that the course of judicial decision since then discloses a change of attitude towards such sufferers.

"We can find no evidence of such a change, nor do we see any antecedent reason to think that we were wrong before."

See, also, The West Point, D.C., 71 F. Supp. 206, 212.

In like manner, under the Railroad Control Act of 1918, 40 Stat. 451, when the Federal Government controlled the railroads, it was held that a soldier injured by the negligent operation of a railroad had no valid action against the United States. Sandoval v. Davis, D.C., 288 F. 56. See also, Dahn v. Davis, 258 U.S. 421, 428, 42 S.Ct. 320, 66 L.Ed. 696.

▰▰ Appellees make much of the fact that the Act contains certain specific exceptions to the liability of the United States. From this it is argued that these expressed exceptions negative any other implied exceptions. Moore Ice Cream Co. v. Rose, 289 U.S. 373, 377, 53 S.Ct. 620, 77 L.Ed. 1265; Cunard Steamship Co. v. Mellon, 262 U.S. 100, 128, 43 S.Ct. 504, 67 L.Ed. 894, 27 A.L.R. 1306; Lapina v. Williams, 232 U.S. 78, 92, 34 S.Ct. 196, 58 L.Ed. 515. The maxim expressio unius est exclusio alterius is by no means a rule of statutory interpretation to be universally applied. Special stress is laid by appellees on two of these express exceptions spelled out in the Act. Section 421(j) of the Act excepts: "any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." See Skeels v. United States, D.C., 72 F.Supp. 372. Section 421(k) excepts claims "arising in a foreign country." This argument of appellees would have greater force if these two exceptions were set out in terms of *claimants.* But such is not the case. The first exception is couched solely in terms of the nature of the activity giving rise to the claim (combatant activities in war time) regardless of the claimant. And the second exception is stated purely in terms of place (whoever may make the claim), the locus delicti,—"a foreign country."

This contention of appellees with respect to the exceptions in question, if sound, would lead to rather fanciful results. Thus, under the first exception, a soldier killed or injured in the important and perilous combat activities of war would be denied a recovery; while there would be a perfect claim for the soldier killed or injured in non-combat activities. Under the second exception, for a soldier injured or killed while stationed in Canada, no recovery; for a soldier injured or killed at Plattsburg, New York, just a few miles from the Canadian border, again a recovery. It is difficult for us to think that Congress intended such results to flow from the Federal Tort Claims Act.

Judicial authority on the precise problem before us is very scant. As far as we know, no federal appellate court has decided this question. In Troyer v. United States, 79 F.Supp. 558, the action against the United States was dismissed by the United States District Court for the Western District of Missouri. The leading case seems to be Jefferson v. United States, decided by District Judge Chesnut in the United States District Court for the District of Maryland. When this case first came before him, 74 F.Supp. 209, Judge Chesnut denied without prejudice the motion to dismiss; but when the case was before him for final disposition, 77 F.Supp. 706, the complaint was dismissed. See Hulen (U. S. District Judge), Suits on Tort Claims against the United States, 7 F.R.D. 689, 694, 695.

There is a clear factual distinction between the Jefferson case and the case before us. There the injury was service-caused since the claim was based on the negligence of an army surgeon while performing a surgical operation on the soldier. With us, the injuries were service-connected though not service-caused; for, at the time of the accident, appellees were on furlough or leave, riding in their privately owned automobile. Counsel for appellees, relying heavily on this factual distinction between the two cases, contend that the Jefferson decision does not control the instant case.

We readily admit the added and greater reason for denying recovery where the injury is service-caused (the Jefferson case) than where the injury is not service-caused (the present case). It is easy to conjure up the unfortunate results, including the subversion of military discipline, if soldiers could sue the United States for injuries incurred by reason of their being in the armed service of their country. If soldiers could sue for such injuries as illness based on the alleged negligence of the company cook or mess sergeant, or if soldiers who contract sickness on wintry sentry duty had a right of action against the Government on the allegation of a negligent order given by the company commander, then the traditional grousing of the American soldier would result in the devastation of military discipline and morale.

However, as we read his opinion, the cogent and powerful reasoning of Judge Chesnut is applicable to soldiers regardless of whether or not the injury is service-caused. And the Federal Tort Claims Act, as we interpret it, either excludes (subject, of course, to the express exceptions) soldiers altogether or completely includes them. We are quite unable to find in the Act anything which would justify us in holding that Congress intended to include death of, or injury to, a soldier, which was not service-caused (the instant case) and to exclude service-caused injury or death (the Jefferson case).

Our attention is called to the fact that in an early draft of the Federal Tort Claims Act (H. R. 181, introduced by Mr. Celler) there was an express exception with reference to soldiers, and the Act was finally enacted without this exception. The argument is made that when Congress, with this exception brought to its attention, deliberately omitted this exception from the final draft of the Act, it must fairly be inferred that Congress clearly intended to include soldiers within the scope of the Act.

This omitted exception (H. R. 181, section 402(8) reads as follows: "Any claim for which compensation is provided by the Federal Employees' Compensation Act, as amended, or *by the World War Veterans' Act of 1924."* (Italics ours.)

Thus a careful reading of this section shows that it did not exclude soldiers as a class from the benefits of the Act. It merely excepted (in addition to claims under the Federal Employees' Compensation Act, 5 U.S.C.A. § 751 et seq.) "Any claim for which compensation is provided * * * by the World War Veterans' Act of 1924 [38 U.S.C.A. § 421 et seq.],"— that is, merely and solely claims compensable under a single Act of Congress, the World War Veterans' Act of 1924.

It is certainly arguable that Congress, when this exception was finally considered and rejected, must have been familiar with the Dobson and Bradey cases. If so, and Congress did intend to include soldiers within the scope of the Act, every dictate of common sense would seem to require that Congress would manifest this intention not by inference or implication but, on so important a matter, by emphatic positive expression to that effect, in words so clear that they could readily be understood, even by federal judges. So radical a departure from previous policy and thought should certainly have been expressly stated and not left to inference. It might well have been, too, that Congress, aware of the considerations advanced in this opinion thought (as we do) that the Act, in its final form, did not apply to soldiers.

Judge Chesnut, in his opinion in the Jefferson case, D.C., 77 F.Supp. at page 712, stated: "The problem here is made more difficult by reason of the fact, as noted in the previous opinion in this case, that section 421 of the Act, 28 U.S.C.A. § 943, contains numerous types of claims which are excepted from the coverage of the Act, none of which, however, include the instant situation, *although in a prior proposed Act for the same general purpose, there was included such an exception.* Nevertheless, as previously stated, I reach the conclusion that the implied exception does exist in this case." (Italics ours.)

Again, at D.C., 77 F.Supp. page 713, Judge Chesnut, in referring to "Senate Report No. 1400, and also in the House

Committee Report of July 22, 1946" said: "And again in commenting on the stated exceptions to the Act appearing in section 421, it was said that the exceptions include 'claims which relate to certain governmental activities which should be free from threat of damage suits, or for which adequate remedies are already available.' "

And we quote another statement from his opinion, Jefferson v. United States, 77 F.Supp. at page 714:

"The case strongly emphasizes the particular nature of government-soldier relationship and this furnishes strong support for the view that it was not the intention of Congress in passing the Tort Claims Act to include in the phrase 'any claim' those by former soldiers for service-connected disabilities for which there was already existing a large body of federal legislation.

"Again it may be noted that section 410(a) also provides with respect to the test of liability as follows: 'Subject to the provisions of this title, the United States shall be liable in respect of such claims, to the same claimants, in the same manner, and to the same extent, as a private individual under like circumstances'.

"This phraseology is seemingly inept if it had been the intention of Congress to give soldiers additional redress for service-connected disabilities. It is hardly conceivable to analogize the liability of the United States to that of a private individual in respect to service-connected disabilities in view of the government-soldier particular relationship."

■ For the reasons advanced in this opinion, we think the Federal Tort Claims Act does not apply to claims by soldiers in the United States Army, even when those claims arise out of injuries or death which, as here, are not service-caused. Both of the judgments in favor of the plaintiffs-appellees in the District Court must, therefore, be reversed.

Reversed.

PARKER, Chief Judge (dissenting).

These are appeals by the United States from judgments in favor of claimants under the Federal Tort Claims Act of August 2, 1946, 60 Stat. 842, 28 U.S.C.A. § 921. Plaintiffs were a soldier and the administrator of a deceased soldier of the United States Army. The claims were for damages on account of injuries received by the soldier and for the death of the deceased soldier resulting from the negligence of a civilian employee of the United States in the operation of an army truck. The two soldiers were on furlough and were riding with their father, a civilian, in a private automobile on a public highway and were not engaged in any business connected with their army service. The trial court found that the collision which resulted in the injury of one of the soldiers and the death of the other was due solely to the negligence of the civilian employee of the United States who was operating the army truck which ran into the automobile in which they were riding. Judgments were entered in favor of the soldier plaintiff for $4,000 damages on account of personal injury and in favor of the administrator of the deceased soldier for $25,000 on account of wrongful death and $425 property damage.

The father of the two soldiers was injured as a result of the same collision and he was awarded $5,000 damages; but no appeal was taken from that judgment and no question is raised on the appeals before us as to the finding of the District Judge on the question of negligence. The contention of the United States is that recovery under the Tort Claims Act must be denied to the soldier and the administrator of the deceased soldier on the ground that claims arising out of the injury of or killing of soldiers is not covered by the act. An alternative contention is that plaintiffs are precluded of recovery because the mother of the deceased soldier was awarded a death gratuity under existing law of $468 and the injured soldier was granted $27.60 per month disability compensation by the Veterans Administration on account of the injury that he had received.

The principal question in the case is whether the court shall read into the act an exception excluding soldiers from the right to recover under its provisions. I

see no basis for reading such an exception into the act. Legislation is a matter for Congress, not for the court; and the language used by Congress clearly covers soldiers as well as civilians.[1] It is neither reasonable nor respectful to Congress for the courts to assume that the import of the general language used in the statute was not understood or that language excluding soldiers from the benefit of the act was omitted through inadvertence. The act was passed at a time when the country was deeply conscious of the rights and claims of soldiers. The greatest army in the history of the country was being demobilized but many hundreds of thousands of men were still under arms, and it is hardly probable that Congress could have overlooked the fact that claims on their part would be covered by the general language used. Added to this is the fact that prior bills considered by Congress excluded claims compensable under the World War Veterans Act;[2] and it is fair to assume that these bills with their exclusions were before the draftsmen of this act. Then, too, the act itself, in Sec. 402(b), expressly mentions members of the military and naval forces as among those for whose acts liability is established, and in section 424(a) repeals the act of July 3, 1943, 57 Stat. 372, 31 U.S.C.A. § 223(b), which authorized the Secretary of the Army to settle claims against the United States, not exceeding $1,000, for damage caused by military personnel or civilian employees of the army. It is not reasonable to assume that the claims of soldiers were overlooked at a time when soldiers and their rights were so prominently in the public mind, when prior proposed legislation dealt explicitly with that matter and when the act itself repealed legislation under which limited relief could be granted them.

And it is not reasonable to assume that at the end of a victorious war, when the heart of the country was filled with gratitude to the soldiers for their achievements on the field of battle, Congress would have passed a statute discriminating against them and leading to such absurd results as would be presented by the case at bar, if the position of the government is sustained. In this case the position of the soldiers was precisely that of their civilian father. They were not engaged in military duty, but were riding, as he was,

[1] The pertinent language of the statute, 60 Stat. 843–844, is as follows:

"Sec. 410. (a) Subject to the provisions of this title, the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, including the United States district courts for the Territories and possessions of the United States, sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this title, the United States shall be liable in respect of such claims to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances. * * *

"(b) The judgment in such an action shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the Government whose act or omission gave rise to the claim."

[2] H.R. 5373, introduced into the House July 21, 1941, 77 Cong. 1st Sess., S. 2221, introduced into the Senate, 77 Cong. 2d Sess., H.R. 6463 introduced into the House, 77 Cong. 2d Sess., January 26, 1942, and H.R. 181, introduced into the House January 3, 1945 and committed to the Committee of the Whole House and ordered to be printed Nov. 26, 1945, 79 Cong. 1st Sess., Union Calendar No. 392, all were tort claims bills and all contained a section setting forth exceptions in practically the same language as section 421 of the Federal Tort Claims Act hereinafter quoted, except that all of them contained an additional exception in the following language: "(8) Any claim for which compensation is provided by the Federal Employees' Compensation Act, as amended, or by the World War Veterans' Act of 1924, as amended."

in a privately owned automobile on a public highway. To say that he, the civilian, may recover, but that they must be denied recovery merely because they are soldiers would certainly come as a shock to one not familiar with legal refinements; and the shock would not be alleviated by the knowledge that the mother of the deceased had been awarded a death gratuity of $468 and the injured man disability compensation of $27.60 per month. It would be thought that they were entitled to these pension benefits under the laws of the United States just as the seaman is entitled to maintenance and cure from his vessel, as a sort of accident and health insurance incident to the relationship[3] and that the fact that these were received would constitute no reason for denying to the soldier the more substantial recovery to which any civilian would be entitled under like circumstances.

Another reason for holding that it was not the intention of Congress to exclude soldiers from the protection afforded by the act is that the act itself lists twelve exceptions to its application under the heading of exceptions and no such exception is listed among them.[4] Not only is this true, but one of the exceptions, (j), expressly refers to the military and naval forces and provides that any claim arising out of their combatant activities in time of war shall not be covered by the act. If it had been intended that claims on behalf of members of the military and naval forces should not be covered, the inclusion of exception (j) would certainly have suggested that express language be used for that purpose.[5] The rule applicable is elementary law and is well stated with citation of the controlling authorities in 50 Am.Jur. p. 455–456 as follows: "* * * where express exceptions are

---

[3] See Smith v. United States, 4 Cir., 167 F.2d 550.

[4] The text of the act, 60 Stat. 845–846, is as follows:

"Exceptions. Sec. 421. The provisions of this title shall not apply to— (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Government, whether or not the discretion involved be abused. (b) Any claim arising out of the loss, miscarriage, or negligent transmission of letters or postal matter. (c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods or merchandise by any officer of customs or excise or any other law-enforcement officer. (d) Any claim for which a remedy is provided by the Act of March 9, 1920 (U.S.C., title 46, secs. 741–752, inclusive) or the Act of March 3, 1925 (U.S.C., title 46, secs. 781–790, inclusive), relating to claims or suits in admiralty against the United States. (e) Any claim arising out of an act or omission of any employee of the Government in administering the provisions of the Trading with the Enemy Act, as amended. (f) Any claim for damages caused by the imposition or establishment of a quarantine by the United States. (g) Any claim arising from injury to vessels, or to the cargo, crew, or passengers of vessels, while passing through the locks of the Panama Canal or while in Canal Zone waters. (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights. (i) Any claim for damages caused by the fiscal operations of the treasury or by the regulation of the monetary system. (j) Any claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war. (k) Any claim arising in a foreign country. (l) Any claim arising from the activities of the Tennessee Valley Authority."

The language of the Act is precisely the language contained in H.R. 181 to which reference has heretofore been made except that it omits the exception as to claims for which compensation is provided and in section (j) inserts the word "combatant" before activities.

[5] Section 421(j) as originally drawn excluded any claim arising out of "activities" of the military and naval forces or coast guard during time of war. It was amended on its passage through Congress to exclude only claims arising out of "combatant activities", (See 92 Cong. Record 10143), thus showing that the mind of Congress was expressly drawn to liabilities arising in connection with the military and naval forces.

made, the legal presumption is that the legislature did not intend to save other cases from the operation of the statute. In such case, the inference is a strong one that no other exceptions were intended, and the rule generally applied is that an exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted, and excludes all other exceptions or the enlargement of exceptions made."

For cases in which the rule has been applied, see Moore Ice Cream Co. v. Rose, Collector, 289 U.S. 373, 377, 53 S.Ct. 620, 77 L.Ed. 1265; Cunard Steamship Co. v. Mellon, 262 U.S. 100, 128, 43 S.Ct. 504, 67 L.Ed. 894, 27 A.L.R. 1306; Lapina v. Williams, 232 U.S. 78, 92, 34 S.Ct. 196, 58 L.Ed. 515; Wood v. Wilbert, 226 U.S. 384, 390, 33 S.Ct. 125, 57 L.Ed. 264; Equitable Life Society v. Clements, 140 U.S. 226, 233, 11 S.Ct. 822, 825, 35 L.Ed. 497. In the case last cited, the Supreme Court, speaking through Mr. Justice Gray, in construing general terms of a statute governing life insurance policies as applicable to the case before the court, had the following to say with regard to the effect of a section prescribing specific exceptions: "This construction is put beyond doubt by section 5986 [Mo.R.S.A. § 5855], which, by specifying four cases (two of which relate to the form of the policy) in which the three preceding sections 'shall not be applicable,' necessarily implies that those sections shall control all cases not so specified, whatever be the form of the policy."

What seems a conclusive reason for not reading into the act the exception suggested, however, is that this exception was originally contained in the tort claims act which was introduced into Congress as H.R. 181 January 3, 1945, and was omitted, with apparent deliberation, when that bill was incorporated as the Tort Claims Section of the Legislative Reorganization Act. See H. R. 181 and Report No. 1400 on the Legislative Reorganization Act, p. 30, where the following language appears: "Attention is called to the fact that there is now on the House Calendar a bill (H. R. 181, 79th Cong.) almost identical with this title. The essential difference is that the House bill puts a maximum limitation of $10,000 on claims for which suit may be brought, whereas this title as reported by your committee contains no such limitation. The committee is of the opinion that in view of the banning of private claim bills in the Congress no such limitation should be imposed, and that with respect to this type of claim the Government should be put in the same position as any private party. For the information of the Senate the following statement from the House Committee report on H.R. 181 'H. Rept.No. 1287, 79th Cong., 1st sess.), covering the history of this legislation and a summary of existing law is incorporated and made a part of this report:".

H. R. 181 contained thirteen exceptions in the section which became section 421 of the Tort Claims Act, one of which was as follows:

"(8) Any claim for which compensation is provided by the Federal Employees' Compensation Act, as amended, or by the World War Veterans' Act of 1924, as amended."

This exception was omitted from the Tort Claims Act when the others were written in as Section 421. In my opinion the court is without power to write back into an act by interpretation a section which Congress has thus deliberately omitted. The only excuse for reading in an exception by interpretation is that Congress must be presumed to have intended that an exception apply; but Congress could not be presumed to intend that an exception apply, when it deliberately struck the exception from the act upon its passage.

The foregoing conclusion is not answered by the fact that the exception in H.R. 181 related to claims for which compensation is provided by the World War Veterans Act of 1924 as amended, and not to soldiers eo nomine. The only argument advanced for excluding soldiers from the benefit of the act is that provision is made for them elsewhere. The only provision made for them elsewhere, so far as compensation for injuries is concerned, is in

the World War Veterans Act of 1924 as amended; and when Congress had before it a provision excluding claims covered by this act as amended and deliberately omitted it from the legislation as passed, the conclusion is inescapable that it was not intended to exclude soldiers from the benefit of the act even as to claims so covered.

The government places special reliance upon the decisions in Dobson v. United States, 2 Cir., 27 F.2d 807 and Bradey v. United States, 2 Cir., 151 F.2d 742. These cases were sufficiently distinguished by Judge Chesnut in his opinion in Jefferson v. United States, 74 F.Supp. 209, 212, 213, where he said: "But aside from the difference in wording between the Public Vessels Act and the Suits in Admiralty Act and the Tort Claims Act, it is to be importantly borne in mind that the last mentioned Act represents a marked departure by the United States with respect to the waiving of sovereign immunity. It is a comprehensive Act which, subject to the exceptions therein contained, acknowledges liability of the sovereign for injuries and damages to property and persons generally where the damage results from negligence in the performance of duties by its employees. This comprehensive Act was passed subsequent to the various special Acts waiving immunity under certain conditions and to a limited extent, as in the Public Vessels Act and the Suits in Admiralty Act. By one of the exceptions it does not apply to claims or suits in admiralty against the United States under the Suits in Admiralty Act, 46 U.S.C.A. §§ 741–752 inclusive, or the Public Vessels Act, 46 U.S.C.A. §§ 781–790 inclusive. But outside of the specific exceptions, as already noted, it does apply to 'any claim against the United States, for money only, accruing on and after January 1, 1945' ".

It should be noted that the claims in suit here do not arise out of injuries connected with the military service of plaintiffs, as was the case in Jefferson v. United States, D.C., 77 F.Supp. 706. Entirely different considerations might operate to deny recovery in such case, as is suggested in the opinion of Judge Chesnut. Since the act does no more than give the right to sue the government and adopts the law of the state in which the injury has occurred with respect to the establishing of liability, the question arises, as to an injury caused by army service, whether under the law of the state there is any liability for such an injury. No such question is presented here; and the only ground upon which it could be answered in the negative does not exist with respect to an injury which has no connection with army service. In that case, liability would be held not to exist because of lack of basis in state law. Here, the only way in which liability can be avoided is to read into the statute an exception to language which admittedly covers the case, an exception which Congress evidently considered and decided not to incorporate in the act.

It is urged that, if the act is construed to cover claims of military and naval personnel, it will result in a flood of litigation and disrupt discipline in the army and navy; but, even if this be true, the language of the act, being clear as it is, the matter is one for Congress and not for the courts. It may well be doubted, however, that any such fear is well founded. A reading of the exceptions will demonstrate that most claims which could cause trouble along the lines feared are expressly excepted; and, as for other claims it might well be thought that less harm would result from allowing a soldier to sue on them than from denying him the rights accorded to every civilian. Certainly this is true of claims not arising out of service, which would be comparatively few in number and should not cause trouble. It is true, of course, that statutes are to receive a reasonable construction and that, in determining the legislative intent, exceptions are to be read into their language to avoid injustice, oppression or absurd consequences. United States v. Kirby, 7 Wall. 482, 19 L.Ed. 278; Lau Ow Bew v. United States, 144 U.S. 47, 12 S.Ct. 517, 36 L.Ed. 340; Sorrells v. United States, 287 U.S. 435, 446–448, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249. In this case, however, it can well be argued that

more injustice and absurd consequences would result from the exception than from its omission. Congress evidently thought so when it omitted the exception contained in the text of H.R. 181 when adopting the text of that bill as the Tort Claims Act.