UNITED STATES of America

v.

William BUCHANAN a/k/a
Kenneth Parker.

Criminal No. 1:91cr62.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 8, 2009.

Kevin Brehm, Office of the Federal Public Defender, Alexandria, VA, for Defendant.

## MEMORANDUM OPINION

T.S. ELLIS, III, District Judge.

This supervised release proceeding presents the question—novel in this circuit—whether a defendant's period of supervised release is tolled for the period the defendant absconds from supervision such that the supervising court retains jurisdiction to adjudicate alleged violations of the supervised release that occur after the expiration of the originally-scheduled period of supervised release, but while defendant remains a fugitive.

Here, defendant, in 1995, was two years into serving a five-year period of supervised release when he was indicted on a state drug trafficking charge in Ohio. As a result, he was placed on bond by the state court and a federal petition on supervised release issued in this district. But before the petition could be adjudicated, defendant violated his state bond and absconded from federal supervision, remaining a fugitive for thirteen years, during which period he allegedly committed additional violations both before and after the originally-scheduled termination of his supervised release.

In these circumstances, defendant contends that there is jurisdiction to adjudicate and punish only the violations alleged in the petition that issued during the period of supervised release, but that there is no jurisdiction to adjudicate the violations alleged in the two addenda which issued after the originally-scheduled end of the

five-year supervised release term and which alleged violations that occurred both prior to and after the originally-scheduled end of the supervised release period. The government disagrees, arguing that defendant's term of supervised release was tolled while he was a fugitive from supervision and hence that there is jurisdiction here over all alleged violations.

For the reasons that follow, there is jurisdiction to adjudicate all of the alleged violations.

## I.

Resolution of this jurisdictional issue requires a summary of the essential facts and proceedings to date. Thus, the record reflects that on February 12, 1991, defendant, then known as Kenneth Parker,[1] waived his right to an indictment and pled guilty in this district to a criminal information charging him with one count of conspiracy to distribute fifty grams or more of crack cocaine, in violation of 21 U.S.C. § 846. On April 19, 1991, defendant was sentenced on this offense to 120 months imprisonment—the statutory mandatory minimum—to be followed by five years of supervised release, subject to various standard conditions of supervision. *See United ed States v. Parker,* 1:91cr62 (E.D.Va. Apr. 19, 1991) (Judgment in a Criminal Case). Approximately a year later, on April 10, 1992, defendant's 120–month custody sentence was reduced to 30 months on the government's motion for a reduction in defendant's sentence pursuant to Rule 35(b), Fed.R.Crim.P., with all other terms and conditions of defendant's original sentence to remain in full force and effect. *See United States v. Buchanan a/k/a Parker,* 1:91cr62 (E.D.Va. Apr. 10, 1992) (Order).

Defendant was ultimately released from custody and commenced his five-year period of supervised release in March 1993, with a scheduled expiration date of sometime in March 1998. Because defendant was a resident of Ohio, his supervision was transferred to the Akron Division of the United States Probation Office for the Northern District of Ohio; jurisdiction was nonetheless maintained in the Alexandria Division of the Eastern District of Virginia. In the circumstances, therefore, defendant had a probation officer in Ohio to whom he was required to report on a frequent basis, as well as a probation officer in Virginia who continued to track defendant's supervision by maintaining regular contact with defendant's Ohio probation officer.

Defendant's supervision apparently proceeded without incident until April 5, 1995. On that date, defendant's supervising Virginia probation officer submitted a "Petition on Probation and Supervised Release" (the "Petition") alleging, *inter alia,* that defendant had violated the terms and conditions of his period of supervised release by incurring a new criminal charge in Ohio. In this regard, defendant's Virginia probation officer learned—nearly a year after it occurred—that defendant had been indicted on state drug trafficking charges in Ohio on May 2, 1994. This indictment was apparently filed against defendant under the name William Buchanan, using the same birth date and social security number as had been recorded in the instant case. Defendant was released on bond in connection with the Ohio indictment, but later failed to appear for trial in the state court on February 13, 1995, resulting in the issuance of a warrant for his arrest. He

---

[1]. At the time of his 1991 conviction, defendant was known by the name of Kenneth Parker, with a date of birth of December 18, 1971, and a social security number ending in 4482.

also absconded from federal supervision. In this respect, the Petition further alleges that defendant (i) failed to report to his supervising Ohio probation officer as directed and (ii) failed to notify his Ohio probation officer within 72 hours of any change in residence or employment. The Petition further notes that defendant's last known personal contact with his Ohio probation officer occurred on January 25, 1995, and thereafter defendant failed to appear for a February 24, 1995 scheduled office appointment with his Ohio probation officer; nor did defendant contact his Ohio probation officer to explain his absence on that occasion. The Ohio probation officer subsequently conducted several home visits to verify that defendant no longer resided at his approved Ohio residence, and in so doing, the Ohio probation officer confirmed that defendant had absconded from supervision and that his whereabouts were then unknown.

Based on the Petition's allegations, a federal arrest warrant issued for defendant on April 13, 1995. Significantly, this warrant remained outstanding for over *thirteen* years, during which time defendant's whereabouts remained unknown and he was deemed a fugitive by the United States Marshal's Service (USMS). Eventually, on December 27, 2008, defendant was found and arrested by the USMS in Chamblee, Georgia. At the time of his arrest, defendant was driving a U-haul truck in an apparent attempt to evade arrest and flee once again. Additionally, a search of defendant's person incident to this arrest disclosed that he was in possession of six means of false identification, including a false Nevada Driver's License bearing the name Terrence Baker and a birth date of October 13, 1968.

On February 23, 2009, shortly after defendant's arrest in Georgia, an addendum to the Petition ("Addendum I") was filed alleging that, during his thirteen-year absence from federal supervision, defendant had been charged with several additional crimes while using various aliases, all in violation of the terms and conditions of his period of supervised release in this matter. Addendum I set forth the following alleged violations, only the first of which occurred within five years of the commencement of defendant's period of supervised release:

(i) On September 8, 1996, defendant was arrested in Mobile, Alabama for marijuana trafficking. At the time of this arrest, defendant was using the name Christopher Michael Burch, with an alleged birth date of March 5, 1972, and a social security number ending in 7260. Defendant failed to appear at a December 19, 1996 scheduled hearing in that matter, resulting in the issuance of a bench warrant for his arrest.

(ii) On March 5, 2005, defendant was arrested in Springfield, Missouri for possession of a controlled substance, unlawful use of a weapon and distribution, delivery and manufacturing of a controlled substance. On this occasion, defendant was using the name Elton Flowers, with an alleged birth date of April 4, 1975, and a social security number ending in 7903.[2]

(iii) On January 15, 2008, defendant was arrested in Atlanta, Georgia for driving under the influence (DWI). At the time of this arrest, defendant was using the name Christopher Cooper, with an alleged birth date of February 7, 1977, and a social security number ending in 9134. Defendant failed to appear at a June 4, 2008 court hearing on that charge, resulting in the issuance of a bench warrant for his arrest.

**2.** Addendum I further noted that the charge of distribution, delivery and manufacturing of

a controlled substance was dismissed by the Missouri state court on October 3, 2005.

(iv) Finally, on December 27, 2008, defendant was arrested in Atlanta, Georgia for entering an auto or other motor vehicle with intent to commit a theft or felony and financial transaction card fraud. Defendant was again using the name Christopher Cooper on this occasion, but this time with an alleged birth date of December 18, 1971, and a social security number ending in 4482 the same birth date and social security number recorded in the instant case.

Once defendant was brought to this district from Georgia,[3] he appeared on March 6, 2009 for a hearing on the allegations set forth in the Petition and Addendum I. At the conclusion of that hearing, the matter was continued to March 27, 2009, to allow defendant and the government the opportunity to present additional witnesses and argument regarding the alleged violations. Moreover, in light of certain testimony presented in the course of the March 6, 2009 hearing, a second addendum to the Petition was filed on March 26, 2009 ("Addendum II"), alleging that in 2008 defendant violated his conditions of supervised release by committing the additional crime of identity theft. This additional alleged violation was based on the fact that on September 24, 2008, Christopher Cooper—the individual whose identity defendant was using at the time of his January 15, 2008 arrest for DWI in Atlanta, Georgia—filed an identity theft report with the State of Georgia Driver's Fraud Division.

The matter then proceeded to an evidentiary hearing on March 27, 2009, during which the government presented the testimony of six witnesses in support of the violations of supervised release alleged in

the Petition, Addendum I and Addendum II (referred to collectively as the "Addenda"). At the conclusion of the hearing, the parties were directed to file supplemental briefs addressing, *inter alia*, the question whether there is jurisdiction to adjudicate the supervised release violations alleged in the Addenda, both of which were filed in 2009, more than ten years after the originally-scheduled termination of defendant's supervised release term. A subsequent hearing was scheduled for May 8, 2009.

Findings issued at the conclusion of the May 8, 2009 hearing that defendant violated the terms and conditions of his period of supervised release as alleged in the Petition, namely (i) by trafficking in cocaine in Akron, Ohio in 1994, and (ii) by absconding from supervision in early 1995, specifically, by failing to report to his Ohio probation officer as directed and by failing to notify his Ohio probation officer within 72 hours of any change in residence or employment. Sentencing on these violations, as well as disposition of the remaining violations alleged in the Addenda was deferred pending additional briefing by the parties on the threshold jurisdictional issue. The parties have since filed their respective supplemental briefs and the matter is now ripe for disposition. Specifically at issue is whether there is jurisdiction to adjudicate the supervised release violations alleged in the Addenda. Defendant concedes there is jurisdiction to adjudicate the violations alleged in the Petition because it was timely filed and resulted in the issuance of a valid warrant during defendant's period of supervised release. But he argues that the same conclusion is not warranted with respect to the Addenda as they were not filed until 2009, approxi-

---

**3.** Defendant appeared for an identity and detention hearing in the United States District Court in the Northern District of Georgia on February 3, 2009. Defendant did not contest his identity at that time and he was thus ordered to be returned by the USMS to the Eastern District of Virginia on the warrant issued as a result of the Petition filed in this case.

mately fifteen years after the commencement of defendant's five-year period of supervised release.

## II.

The starting point in the analysis must be the terms of any pertinent statutes, for the analysis need go no further if Congress has spoken on the question presented. Defendant points to two provisions—18 U.S.C. §§ 3583(i) and 3624(e)—and argues that these provisions define the universe of cognizable supervised release petitions and that the Addenda fall outside this universe. This argument, while plausible, is ultimately unpersuasive.

Section 3583(i) provides, in pertinent part, that

> [t]he power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and . . . a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration *if before its expiration, a warrant or summons has been issued* on the basis of an allegation of such a violation.

18 U.S.C. § 3583(i) (emphasis added). Thus, the key to the application of this statute is the determination of the date of the "expiration" of defendant's supervised release period. In this connection, defendant argues that his supervised release expired in March 1998, five years after it commenced, while the government argues that the running of the five-year super-

vised release term was tolled during the period defendant remained a fugitive from supervision. Defendant responds, arguing that the only time that is properly excludable from a supervised release term is that which is permitted by statute, specifically 18 U.S.C. § 3624(e), which provides that "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." 18 U.S.C. § 3624(e).

The flaw in defendant's argument is that the statutes on which he relies do not speak directly to the question presented here. Importantly, § 3583(i) does not define when a period of supervised release expires where, as here, the defendant under supervision has absconded from supervision. Nor does § 3624(e) address the specific question presented here, as that statute does no more than identify one specific period of excludable time from a period of supervised release, namely where a defendant is imprisoned for at least 30 days in connection with another federal, state or local conviction. *See* 18 U.S.C. § 3624(e). This statute does not state explicitly or inferentially that this is the *only* permissible excludable time.[4] And of course, this statute does not mention whether time should be excluded where, as here, defendant became a fugitive during his period of supervised release. Thus, it cannot be said that Congress has spoken directly to provide the answer to this question. And where Congress has not expressly addressed the question presented, it is not uncommon for courts to impose a

---

**4.** Defendant's reliance on the interpretive maxim *expressio unius est exclusio alterius* is unpersuasive; that maxim "is by no means a rule of statutory interpretation to be universally applied," particularly where, as here, rigid application of the maxim would essen-

tially contradict the underlying purposes of supervised release, as discussed *infra*. *United States v. Brooks*, 169 F.2d 840, 844 (4th Cir. 1948), *rev'd on other grounds, Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949).

tolling provision in appropriate circumstances.[5] This case presents precisely such appropriate circumstances.

Significantly, tolling a term of supervised release during any period that defendant is a fugitive from supervision is consistent with both the purposes of supervised release and common sense. To be sure, the rehabilitative purposes of supervised release can only be achieved if the defendant is actually subject to the supervision contemplated by the statute.[6] And this, of course, cannot occur where, as here, a defendant absconds from the probation officer's supervision and remains a fugitive. Indeed, a sentence that includes a term of supervised release following a defendant's release from imprisonment is rendered meaningless if that defendant spends all or most of his entire term of supervised release as a fugitive, thereby not receiving the supervision deemed necessary and appropriate by Congress for that defendant to readjust to life in the community or to learn to be a productive member of society. Only by tolling the running of the period of supervised release can effect be given to Congress's purpose in providing for supervised release.[7]

---

**5.** Courts have created tolling exceptions to statutorily-established periods of time or limitations periods in the absence of express statutory authority to do so, provided that tolling was not inconsistent with the text of the relevant statute. *See United States v. Beggerly*, 524 U.S. 38, 48, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (holding that equitable tolling is not available in a suit brought pursuant to the Quiet Title Act because that statute already effectively allows for equitable tolling by providing that the statute of limitations will not begin to run until the plaintiff "knew or should have known of the claim," noting that "equitable tolling is not permissible where it is inconsistent with the text of the relevant statute"); *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 148, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (recognizing, in a Title VII discrimination action, that a charging party may, in appropriate circumstances, be entitled to the benefit of equitable tolling in order to extend the 90–day time limit to file suit in state or federal court following dismissal of an administrative charge); *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir.2000) (recognizing, in a habeas case, that "principles of equitable tolling may, in the proper circumstances, apply to excuse a plaintiff's failure to comply with the strict requirements of a statute of limitations"); *Roach v. Option One Mortg. Corp.*, 598 F.Supp.2d 741, 751 (E.D.Va.2009) (recognizing that the Truth in Lending Act's one-year statute of limitations is generally subject to equitable tolling where a defendant has fraudulently concealed facts underlying a violation of the Act).

**6.** *See, e.g., United States v. Holman*, 532 F.3d 284, 287–88 (4th Cir.2008) (noting that the supervised release statute provides that a district court may impose any appropriate condition of release that is, *inter alia*, reasonably related to the need for the sentence to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, or to provide defendant with needed education or vocational training); *United States v. Murguia–Oliveros*, 421 F.3d 951, 954 (9th Cir.2005) (noting that the purpose of supervised release is " 'to protect the public and to facilitate the reintegration of the defendant into the community' ") (citation omitted); *United States v. Crea*, 968 F.Supp. 826, 829 (E.D.N.Y.1997) (recognizing that "[s]upervision is a means of protecting the public from those who have been deemed dangerous. The defendant is allowed a chance to readjust to society and an opportunity to learn how to live a life free of criminal activity"); *see also* 18 U.S.C. § 3583(c) (providing that "[t]he court, in determining whether to include a term of supervised release, and, if a term of supervised release is to be included, in determining the length of the term and the conditions of supervised release, shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)").

**7.** *See* S.Rep. No. 98–225, at 124 (1983) (noting that "the primary goal of such a term [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other pur-

Nor does the result reached here improperly extend or increase defendant's period of supervised release beyond the originally imposed five-year term, as defendant argues. Rather, the entire period defendant was a fugitive from supervision is properly excluded from the five-year calculation altogether.[8] Indeed, to accept defendant's argument that his term of supervised release should not be tolled while he was a fugitive would essentially reward defendant for absconding, as it would afford defendant credit toward his period of supervised release for time spent evading the very supervision to which he was sentenced. Such a result defeats the essential purposes of supervised release and flies in the face of the Congressional intent in enacting the supervised release statute. To be sure, just as an inmate would not receive credit toward his custody sentence for any time spent in fugitive status following an escape from prison, so, too, does common sense dictate that a defendant similarly should not receive credit toward his period of supervised release for time spent as a fugitive from supervision.

It should also be noted that the result reached here to toll the running of a period of supervised release while the defendant is a fugitive from supervision is not unprecedented. While there is no controlling Fourth Circuit precedent, the Ninth Circuit has squarely addressed this question and reached precisely the result reached here. Specifically, in *United States v. Crane,* 979 F.2d 687 (9th Cir. 1992), the Ninth Circuit expressly held that any period during which a defendant is in fugitive status is not credited toward that defendant's term of supervised release. As courts often do in creating such non-statutory tolling exceptions, the Ninth Circuit relied on reasons of equity and common sense to support its conclusion in *Crane,* specifically noting that "[t]o hold otherwise . . . would reward those who flee from bench warrants and maintain their fugitive status until the expiration of their original term of supervised release." *Id.* at 691 (citing *United States v. Hill,* 719 F.2d 1402, 1404–05 (9th Cir.1983)). And significantly, the Ninth Circuit sensibly concluded that specific statutory language or authority is not necessary to toll a term of supervised release where, as here, a defendant is in fugitive status. *See Crane,* 979 F.2d at 691 (applying in the context of supervised release its previous holding that specific statutory language "is not required to toll the term of regular parole or special parole while a defendant is in fugitive status") (citations omitted); *see also Murguia–Oliveros,* 421 F.3d at 953 (citing *Crane* for the principle that "specific statutory language is not required to toll the term of supervised release while a defendant is in 'fugitive status' ").

The Ninth Circuit has consistently applied its holding in *Crane,* further clarifying the definition of "fugitive status" for purposes of tolling a period of supervised release. Thus, in *United States v. Murguia–Oliveros,* 421 F.3d 951 (9th Cir.2005), the defendant illegally reentered the Unit-

---

poses but still needs supervision and training programs after release"), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3307.

**8.** This result is consistent with the long-established principle that the "[m]ere lapse of time without imprisonment or other restraint contemplated by the law does not constitute service of sentence." *Anderson v. Corall,* 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247 (1923). Supervised release, of course, constitutes such a "restraint contemplated by the law" as a defendant, *inter alia,* (i) remains under the control and direction of his probation officer during his period of supervision and (ii) remains subject to the supervision and jurisdiction of the court with respect to any alleged violations committed during his term of supervised release.

ed States following his deportation and thereafter failed to report to his probation officer, in violation of the terms and conditions of his period of supervised release. On these facts, the Ninth Circuit rejected defendant's argument "that he could not become a fugitive merely by failing to comply with the terms of his supervised release," holding instead that defendant "became a fugitive because he effectively absconded from serving the terms of his supervised release." *Id.* at 953, 954. The Ninth Circuit also reiterated the common-sense principle that "[a] person on supervised release should not receive credit against his period of supervised release for time that, by virtue of his own wrongful act, he was not in fact observing the terms of his supervised release." *Murguia–Oliveros,* 421 F.3d at 954 (citation omitted). Thus, at the time of his arrest and a subsequent violation hearing held beyond the originally-scheduled expiration of his term of supervised release, Murguia–Oliveros's period of supervision had not yet expired, as the originally-imposed term was appropriately tolled during the period he was a fugitive from supervision. *Id.* at 955. This is precisely the result that is reached here.

Also persuasive—and surprisingly not cited by either party—is the Fourth Circuit's decision in *United States v. Workman,* 617 F.2d 48 (4th Cir.1980), decided long before the Ninth Circuit's decisions in *Crane* and *Murguia–Oliveros.* There, in the context of a case involving a five-year period of probation, the Fourth Circuit recognized that "a probationer can not [sic] obtain credit against the five-year period for any period of time during which he was not, in fact, under probationary supervision by virtue of his own wrongful act." *Workman,* 617 F.2d at 51. Indeed, the Fourth Circuit identified this as a "unifying principle implicit in the resulting [judicial] [decisions]" addressing such issues. *Id.* Thus, the Fourth Circuit noted that in calculating a defendant's term of probation, "courts have excluded the time period during which a probationer is imprisoned on an unrelated offense [9] ... *or is outside the jurisdiction of the court voluntarily and not under the supervision of a probation officer" Id.* (emphasis added). And, while the circumstances presented in Workman did not "with precision fit this precedential pattern," [10] the latter of these situations is precisely what occurred in the instant case.

This record reflects that defendant knowingly and voluntarily absconded from supervision in 1995, two years into his period of supervised release. He thereafter remained a fugitive from supervision in this matter for approximately thirteen years, until he was ultimately located and apprehended by the USMS in 2008. Moreover, in addition to the fact that he absconded to an unknown location, defendant's identification and apprehension was further hindered by the fact that he traveled to numerous states and used numerous false names, social security numbers and birth dates throughout this thirteen-year period. And each time defendant was arrested and placed on bond following

---

9. This comports with the language of 18 U.S.C. § 3624(e).

10. *Workman,* 617 F.2d at 51. The essential question presented in *Workman* was whether defendant's five-year period of probation was tolled or continued to run after the trial court revoked his period of probation and defendant then successfully appealed this revoca- tion on constitutional grounds, resulting in the revocation order being vacated. Presented with those circumstances, the Fourth Circuit concluded that where "a defendant is successful in appealing a revocation action based on the infringement of his constitutional rights, the probation expiration time is not tolled pending appeal." *Id.*

allegations of new criminal conduct occurring during his lengthy absence from supervision in this matter, he once again fled to avoid facing trial in those new criminal proceedings.[11] Thus, unlike the situation in *Workman*, where the attempted interruption of defendant's period of probation "was not a voluntary act on his part, nor [could] the alleged acts on his part leading to the interruption be considered wrongful in the eyes of the law," here defendant's act of absconding from supervision was not only his own decision, but it was also "wrongful in the eyes of the law," as it was a clear violation of the terms and conditions of his period of supervised release. *Id.*[12]

As the Fourth Circuit did in *Workman*, other circuits have likewise acknowledged the availability of tolling principles based on a defendant's flight or other wrongful act in the context of a supervisory period of probation.[13] And, significantly, there is no reason to distinguish the instant case from *Workman* and other similar decisions decided in the context of a probationary period, as the tolling principles discussed in those cases apply equally to a period of supervised release. *See, e.g., United States v. Standefer*, 77 F.3d 479, 1996 WL

---

**11.** The fact that defendant was arrested several times during this thirteen-year period and was therefore in custody for brief periods of time does not alter the fact that he nonetheless continued to be a fugitive from his federal supervision in this case, as defendant used false names in connection with those additional arrests, his true identity was never discovered, and as soon as he was released with respect to those arrests, he fled once again.

**12.** Significantly, the parties have not cited, nor has an independent search revealed any authority reaching a contrary result. In this regard, defendant's reliance on *United States v. Ossa–Gallegos*, 491 F.3d 537 (6th Cir.2007) and *United States v. Balogun*, 146 F.3d 141 (2d Cir.1998) is inapposite, as those cases are easily distinguishable from the facts presented here. Both *Ossa–Gallegos* and *Balogun* stand for the proposition that a term of supervised release should not be tolled during a defendant's absence from the United States as a result of an immigration order of deportation or removal. An individual who is removed from the country for immigration-related purposes is, of course, not absent as a result of his own wrongful act of absconding, but rather as a result of government action. Moreover, unlike a fugitive defendant—whose whereabouts are completely unknown by the probation officer—a removed defendant residing at a known location in another country can still be subject to appropriate supervision by the probation officer as contemplated by the statute. Indeed, as the Sixth Circuit correctly noted in *Ossa–Gallegos*, district courts may still "use common sense in crafting discretionary conditions [of supervised release]

so that a defendant facing deportation is reasonably able to comply with the conditions while residing outside the United States." *Ossa–Gallegos*, 491 F.3d at 543. Also noteworthy is the fact that the supervised release statute expressly provides that a district court may, as a special condition of supervised release, require an alien defendant to submit to deportation and thereafter remain outside the United States during the period of supervised release. *See* 18 U.S.C. §§ 3583(d), 3563(b)(21). Given this, it would strain reason to exclude from the supervised release calculation any period of time that the defendant complies with the terms of supervised release by remaining outside the United States following his ordered removal. The same cannot be said where, as here, a defendant wrongfully absconds from supervision on his own accord. Indeed, this act is, in and of itself, a violation of the terms and conditions of a defendant's period of supervised release.

**13.** *See United States v. Fisher*, 895 F.2d 208, 210 (5th Cir.1990) (citing *Workman* when acknowledging a "line of cases assert[ing] that the probationary term is tolled and jurisdiction is extended for the period of time during which the probationer is not under probationary supervision because of his own wrongful action"); *United States v. Martin*, 786 F.2d 974, 975–76 (10th Cir.1986) (stating that defendant "is entitled to no credit against his probation term for time he was not under federal supervision because of his own wrongful act") (citing *Workman*, 617 F.2d at 51).

46805 (5th Cir. Jan. 15, 1996) (recognizing, in a case involving a period of supervised release, the availability of tolling principles based on a defendant's flight from supervision, as had been discussed in an earlier probation-related case (*Fisher*) in the same circuit).

## III.

In sum, then, defendant's supervised release has not yet expired as the entire period during which he was a fugitive from supervision is appropriately excluded from the calculation of his supervised release term. Thus, defendant's five-year period of supervised release was tolled at least during the period he remained in fugitive status, from April 13, 1995—when the warrant issued on the Petition until—December 27, 2008, when defendant was located and arrested by the USMS in Georgia. It could also be argued, as the government contends, that defendant's status as a fugitive commenced on February 24, 1995, when he failed to appear for a scheduled office appointment with his Ohio probation officer and was thereafter not able to be located. In any event, it is unnecessary to make this precise determination as defendant's period of supervised release has not yet expired applying even the later of these two dates. Given this, it necessarily follows that the Addenda were timely filed within defendant's period of supervised release and there is therefore jurisdiction to adjudicate all of the violations alleged therein.[14]

An appropriate order will issue scheduling a final hearing in this matter.

14. Because the cases and legal principles discussed above are dispositive of the threshold jurisdictional question presented in this instance, it is unnecessary to reach or address the remaining jurisdictional and evidentiary questions raised by the parties' respective briefs, namely (i) if the period of supervised release was not tolled while defendant was a fugitive, whether there is nonetheless jurisdiction to adjudicate any of the violations alleged in the two Addenda, one of which occurred within five years of the commencement of defendant's period of supervised release; and (ii) if there is no jurisdiction to adjudicate some or all of the alleged violations set forth in the Addenda, whether the allegations for which there is no jurisdiction can nonetheless be considered by the Court pursuant to 18 U.S.C. § 3553(a) in determining the appropriate sentence to be imposed for the violations alleged in the Petition.